**MEIERHOF v. HIGGINS, Collector of Internal Revenue.**

**No. 276.**

Circuit Court of Appeals, Second Circuit.

July 24, 1942.

11 See Geroeami v. Fancy F. & P. Corp., 249 App.Div. 221, 291 N.Y.S. 837.

Samuel R. Feller, of New York City (Leo H. Hirsch, Jr., of New York City, of counsel), for plaintiffs-appellants.

Mathias F. Correa, U. S. Atty., of New York City (David McKibbin, 3d Asst. U. S. Atty., of New York City, of counsel), for Collector of Internal Revenue, defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiffs, as trustees under the will of Edward L. Meierhof, sued the defendant, a Collector of Internal Revenue, to recover an overpayment of the estate taxes which were assessed by the Commissioner. They were granted a recovery of $86.21 plus interest and costs because income between the dates of death and the date of optional valuation had been improperly included in the gross estate. Maass v. Higgins, 312 U. S. 443, 61 S.Ct. 631, 85 L.Ed. 940, 132 A.L.R. 1035. The plaintiffs appeal from the judgment so far as it failed to allow a recovery of taxes on an over-assessment occasioned by the refusal of the Commissioner to deduct from the gross estate the worth of a contingent charitable bequest to Columbia University which had a conceded actuarial value of $9,836.70.

The testator created a trust under the third paragraph of his will in which a fund of $30,000 was to be disposed of as follows:

The income of the fund was to be paid to decedent's sister Esther Hoffman, for life.

If upon the death of Esther Hoffman, her husband Sol Hoffman should not be then living, the corpus of the trust was to be paid to decedent's widow, Lina H. Meierhof, if she should then be living, and if not then living, the fund was to be paid to Columbia University.

If upon the death of Esther Hoffman, Sol Hoffman should then be living, one-half of the fund was to be held in trust for Sol Hoffman for the balance of his life. Upon his death, the one-half was to be paid to Lina H. Meierhof, if then living, or if not then living, to Columbia University. The other one-half of the fund was to be paid upon the death of Esther Hoffman to Mrs. Meierhof, if then living, or if not then living, to Columbia University.

At the time of the decedent's death on October 25, 1937, his sister Esther Hoffman was seventy-four years of age, her husband, Sol Hoffman, seventy-nine and the decedent's wife Lina Meierhof, seventy-one. Sol Hoffman died October 10, 1941; Mrs. Hoffman and Mrs. Meierhof are still living. The court below affirmed the action of the Commissioner in assessing a tax and sought to support it by the following findings:

"22. That the normal life expectancy of Lina H. Meierhof was greater than the normal life expectancies of either Esther Hoffman or Sol Hoffman.

"23. That the charitable bequest to Columbia University was contingent upon the death of a younger designated person prior to the death of two older designated persons.

"24. That it cannot be determined whether the contingent charitable bequest to Columbia University would ultimately take effect or not.

"25. That there was no practical certainty that the contingent charitable bequest to Columbia University would ever take effect.

"26. That the contingency dependent upon which the bequest to Columbia University was to take effect was not probable.

"27. That the contingent charitable bequest to Columbia University involved an uncertainty appreciably greater than the general uncertainty that attends human affairs."

The deduction was claimed under the provisions of Section 303(a) (3) of the Revenue Act of 1926, as amended, 26 U.S.C.A. Int.Rev.Acts, page 235, which reads as follows:

"Sec. 303. For the purpose of the tax the value of the net estate shall be determined * * *

"(a) In the case of a citizen or resident of the United States, by deducting from the value of the gross estate * * *

"(3) The amount of all bequests * * * to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes."

It is to be observed that the deduction comprises: "The amount of all bequests to any corporation" of the class described in the statute. Contingent remainders, like the one to Columbia, have long been valued for purposes of taxation The ultimate vesting in this case depends on the order of survival of three legatees and the value is capable of actuarial computation. It is true that Lina Meierhof's survival of Esther Hoffman and Sol Hoffman would defeat the bequest to Columbia University altogether; yet it had a value and was an "amount" which courts have recognized in computing estate and succession taxes. The New York Court of Appeals recently dealt with the valuation of contingent remainders for estate transfer tax purposes and in an unanimous opinion approved their valuation upon an actuarial basis. Matter of Cregan's Estate, 275 N.Y. 337, 9 N.E.2d 953, 112 A.L.R. 260. In reaching this conclusion it relied on the decision of the Supreme Court in Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647. There deduction was allowed of the value of certain charitable bequests determined by mortality tables, though the principal of the trust was subject to the power of the life beneficiary to deplete it by the use of any sum that might be necessary suitably to maintain the life beneficiary "in as much comfort as she now enjoys," and though she died within six months of the testator. The court held that the value of her interest should be estimated as of the date of death, rather than determined by subsequent events, and that in determining her interest her power to deplete the principal should be disregarded because the income from the trust was so large as to render the non-exercise of the power reasonably certain.

In Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 348, 72 L.Ed. 667, it was held that a contingent bequest to charities was not deductible where the value depended on mere speculation and could not be determined through any known data. There a bequest was made payable to charities if the beneficiary died without issue before attaining the age of forty, the income being paid to her in the meantime. There were no findings that the present value of the contingent bequest to the charities could be determined by the calculations of actuaries based on experience tables. Justice Brandeis, who wrote the opinion, stated that even if there had been findings no legal basis would have been laid for the deduction claimed. The taxpayer argued that such tables existed and that actuaries could determine "what the probability is that a woman dying at a given age will die unmarried; (and) * * * what the probability is that if she marries, she will die childless." The tables relied on in that case

dealt with 4,440 lives of female members and 1,522 lives of male members of the Scotch peerage. The taxpayer sought to have them applied to a Texas girl of fifteen in order "to set a money value on the probability that * * * (she) will not marry, or, if she does, will die without issue before the age of * * * 40." Justice Brandeis said: "Obviously, the calculation * * * was mere speculation bearing the delusive appearance of accuracy," and he added: "One may guess, or gamble on, or even insure against, any future event," but that neither the taxpayer nor a revenue officer, though "equipped with all the aid which the actuarial art can supply—could do more than guess at the value of this contingency." In the case at bar the tables are in current business use in the purchase and sale of life insurance and annuities and in computing interests in estates. These are the tables that in Ithaca Trust Company v. United States, supra, Justice Holmes found established the "intensity of the social desire * * * expressed in the money that (the interest) would bring in the market."

It is to be noted that in Humes v. United States, supra, Justice Brandeis quotes the Treasury Department Regulations 37, Article 56, then in force, governing conditional bequests under the Revenue Act of 1918, 40 Stat. 1057. That Article was in every practical respect identical with Article 47 of the Regulations of 1937 relied upon by the Commissioner on this appeal. Article 47 reads as follows: "Art. 47 Conditional bequests.—If the transfer is dependent upon the performance of some act or the happening of some event in order to become effective, it is necessary that the performance of the act or the occurrence of the event shall have taken place before the deduction can be allowed."

■ Article 47 must, however, be read in connection with Article 44, which provides in part as follows: "If a trust is created for both charitable and private purposes, deduction may be taken of the value of the beneficial interest in favor of the former, only in so far as such interest is presently ascertainable, and hence severable from the interest in favor of the private use."

Article 44 goes on to say that: "If the present worth of a remainder bequeathed for a charitable use is dependent upon the termination of more than one life * * * the claim for deduction must be supported by a full statement, in duplicate, of the computation of the present worth, made in accordance with the principles set forth in Article 10, by one skilled in actuarial computations."

■■ It is argued on behalf of the Collector that Article 44 refers to a trust "for both a charitable and private purpose," while Meierhof's will created a trust in the alternative, for either the decedent's widow, if she should outlive two older persons, or for Columbia University, if she should not. But we see no reason for so construing the words "for both charitable and private purposes" as to preclude their disjunctive application to conditional trust bequests. Nor do we suppose that a bequest to A for life, then to B, if he survives A, and if not, to Columbia, would not allow the deduction of the actuarial value of the gift to Columbia. We think that the trust here was created for "both charitable and private purposes." To say the trust was not created for charitable purposes because, under some circumstances, the gift to charity might fail, would import a meaning to the words which would disregard the long-established practice of valuing parallel interests by mortality tables for purposes of taxation.

It is true that under the rule we are adopting there may be a wide difference between what the mortality tables prophesy and what subsequent events may prove. But Section 303(a) (3) allows a deduction of "the amount of all bequests * * *" to educational corporations without any limitation as to the character of the bequests. Deductions were denied the taxpayer in cases like Humes v. United States because it was impossible to determine the "amount" by any accredited method. But the amount of Meierhof's bequest to Columbia was determined in accordance with practice long used by the Treasury and embedded in the Regulations. We see no reason for abandoning this established practice and find nothing in the Regulations to require such a departure. See United States v. Fourth National Bank, 10 Cir., 83 F.2d 85, at page 91, 107 A.L.R. 793.

■ It is to be remembered that a Regulation similar to Article 44 was in force when Ithaca Trust Company v. United States was decided. It may have been true in that case that the remainder to charities was certain to take effect sometime. But while its value was computed by tables based on a mass of vital statistics, the interest of the particular life beneficiary might have terminated within an hour after

the bequest took effect and actually did terminate long before the date actuarially forecast. The value of the remainder as determined by the mortality tables was far less than the value determined by the event of death, and the Treasury benefited accordingly. The widest possible departures from the valuation may occur whether a remainder be vested or contingent, but because such individual casualties will in the end balance one another, the government will not lose in the long run. The Treasury practice has been to fix a value based on the length of life in the average case and to make no allowance for the actual physical health of the particular life beneficiary. It seems unreasonable that in appraising the Meierhof trust the Commissioner should reject mortality tables reflecting precisely the same averages that he insists upon in the valuation of other interests the worth of which is likewise contingent upon the length of persons' lives. It does not seem unreasonable that as the taxpayer takes the risk of an underestimate of the amount of the charitable deduction due to the uncertainty of life, so the Treasury should take the risk of an excessive deduction. The right to deduct the value in a case like the present depends not on whether it is contingent or vested, but on whether it has an ascertainable market value, and in view of the published Treasury practice in handling interests subject to identical uncertainties the taxpayers properly based the amount of their claimed deduction on actuarial computations.

If because of a very large number of contingencies affecting the vesting of a remainder bequeathed to charity the chance that it will take effect is extremely remote, the "intensity of the social desire" (Ithaca Trust Co. v. United States, 279 U.S. 151, 155, 49 S.Ct. 291, 292, 73 L.Ed. 647) to acquire the interest will be negligible and nothing may be deductible because the market value of the interest would be nil. But in the present case the value of the remainder represented such a large part of the total bequest of $30,000 (particularly when such value was calculated after computing a discount in order to fix its present worth) that it should not be disregarded unless we are to hold that no remainder dependent in value on the termination of prior life estates is to be deducted whether it be vested or contingent.

Judgment so far as appealed from reversed and the case remanded with directions to the District Court to enter judg-ment for the plaintiff upon the basis of a deduction from the gross estate of $9,836.70, being the value of the bequest to the Trustees of Columbia University in the City of New York, and to allow a recovery of the overpayment of estate taxes and interest accordingly.