COMMISSIONER OF INTERNAL REVENUE *v.*
ESTATE OF STERNBERGER, CHASE NATIONAL
BANK OF NEW YORK, EXECUTOR.

No. 24. Argued October 19–20, 1954.—Decided January 10, 1955.

*Melva M. Graney* argued the cause for petitioner.
With her on the brief were *Solicitor General Sobeloff,
Assistant Attorney General Holland, Ellis N. Slack* and
*Robert N. Anderson.*

*Edward S. Greenbaum* argued the cause for respondent.
With him on the brief were *Maurice C. Greenbaum* and
*Charles E. Heming.*

Mr. Justice Burton delivered the opinion of the
Court.

The issue here is whether, in determining a net estate
for federal estate tax purposes, a deduction may be made
on account of a charitable bequest that is to take effect

only if decedent's childless 27-year-old daughter dies without descendants surviving her and her mother. For the reasons hereafter stated, we hold that it may not.

Louis Sternberger died testate June 25, 1947. His federal estate tax return discloses a gross estate of $2,406,541.71 and, for the additional estate tax, a net estate of $2,064,346.55. It includes assets owned by him at his death and others held by the Chase National Bank, respondent herein, under a revocable trust created by him. As the revocable trust makes provisions for charity that are, for our purposes, identical with those in the will, this opinion applies to both dispositions.

The will places the residuary estate in trust during the joint lives of decedent's wife and daughter and for the life of the survivor of them. Upon the death of such survivor, the principal of the trust fund is payable to the then living descendants of the daughter. However, if there are no such descendants, one-half of the residue goes to certain collateral relatives of decedent and the other half to certain charitable corporations. If none of the designated relatives are living, the entire residue goes to the charitable corporations.[1]

At decedent's death, his wife and daughter survived him. His wife was then 62 and his daughter 27. The latter married in 1942, was divorced in 1944, had not remarried and had not had a child.

In the estate tax return, decedent's executor, respondent herein, deducted $179,154.19 from the gross estate as the present value of the conditional bequest to charity of one-half of the residue. Respondent claimed no deduction for the more remote charitable bequest of the other half of the residue. The Commissioner of Internal Revenue disallowed the deduction and determined a tax

---

[1] These provisions appear more fully in *Estate of Sternberger* v. *Commissioner*, 18 T. C. 836, 837–838.

deficiency on that ground.  The Tax Court reversed the Commissioner.  18 T. C. 836.  The Court of Appeals for the Second Circuit affirmed the Tax Court, 207 F. 2d 600, on the authority of *Meierhof* v. *Higgins,* 129 F. 2d 1002. To resolve the resulting conflict with the Court of Appeals for the First Circuit in *Newton Trust Co.* v. *Commissioner,* 160 F. 2d 175, we granted certiorari, 347 U. S. 932.

The controlling provisions of the Revenue Code are in substantially the same terms as when they were first enacted in 1919 [2] and are as follows:

"SEC. 812. NET ESTATE.

"For the purpose of the tax the value of the net estate shall be determined . . . by deducting from the value of the gross estate—

.        .        .        .        .

"(d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests, legacies, devises, or transfers . . . to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes . . . ."  I. R. C.

The Commissioner concedes that the corporations named in the will qualify as charitable corporations under the statute.  There is no doubt, therefore, that if the bequest to them had been immediate and unconditional, its value would be deductible.  The question before us is what, if any, charitable deduction may be made despite (1) the deferment of the effective date of the charitable bequest until the deaths of both decedent's wife and daughter and (2) the conditioning of the bequest upon a lack of descendants of decedent's daughter surviv-

---

[2] Originally § 403 (a) (3) of the Revenue Act of 1918, 40 Stat. 1098. See also, Griswold, Cases and Materials on Federal Taxation (3d ed.), 679 *et seq.;* 1 Paul, Federal Estate and Gift Taxation, 638 *et seq.*

ing at that time.  We find the answer in the Treasury Regulations, which are of long standing and strengthened by reenactments of I. R. C., § 812 (d), since their promulgation.[3]

1. *Section 81.44 of Treasury Regulations 105 would permit the deduction of the present value of the bequest if it were an outright bequest, merely deferred until the deaths of decedent's wife and daughter.*

In their earliest form, the predecessors of these regulations, in 1919, recognized, in plain language, the propriety of the deduction of the present value of a deferred, but assured, bequest to charity.[4]  Section 81.44 (d) of Treasury Regulations 105 does so with inescapable specificity:

"§ 81.44 *Transfers for public, charitable, religious, etc., uses.* . . .

.          .          .          .          .

"(d) If a trust is created for both a charitable and a private purpose, deduction may be taken of the

---

[3] Its latest reenactment is in § 2055 (a) of the Internal Revenue Code of 1954, 68A Stat. 390.  The purpose of the deduction is to encourage gifts to the named uses.  *Edwards* v. *Slocum,* 264 U. S. 61, 63; 13 Geo. Wash. L. Rev. 198, 201; 28 Va. L. Rev. 387–388.  Like other tax deductions, however, it must rest on more than a doubt or ambiguity.  See *United States* v. *Stewart,* 311 U. S. 60, 71, and also *Commissioner* v. *Jacobson,* 336 U. S. 28, 49.

Section 408 (a) of the Revenue Act of 1942, 56 Stat. 949, added to I. R. C., § 812 (d), the so-called "disclaimer provision," whereby, under certain conditions, the renunciation of a private bequest which effectuates a gift to charity earns a charitable deduction from the decedent's gross estate.

[4] "ART. 53. Public, charitable, and similar bequests.—. . . It does not prevent deduction . . . that the property placed in trust is also subject to another trust for a private purpose.  Thus, where money or property is placed in trust to pay the income to an individual during life, and then to pay or deliver the same to a charitable corporation, or apply the principal to a charitable purpose, the charitable

value of the beneficial interest in favor of the former only insofar as such interest is presently ascertainable, and hence severable from the interest in favor of the private use. § 81.10 indicates the principles to be applied in the computation of the present worth of deferred uses, but such computation will not be made by the Commissioner on behalf of the executor. *Thus, if money or property is placed in trust to pay the income to an individual during his life, or for a term of years, and then to pay or deliver the principal to the charitable corporation, or to apply it to a charitable purpose, the present value of the remainder is deductible.* To determine the present value of such remainder, use the appropriate factor in column 3 of Table A or B of § 81.10. *If the present worth of a remainder bequeathed for a charitable use is dependent upon the termination of more than one life, or in any other manner rendering inapplicable Table A or B of § 81.10, the claim for the deduction must be supported by a full statement, in duplicate, of the computation of the present worth made, in accordance with the principle set forth in § 81.10, by one skilled in actuarial computations."* (Emphasis supplied.) 26 CFR.

The very explicitness of the above provisions emphasizes their restriction to "the computation of the present worth" of *assured* bequests such as are the subject of each of the illustrations and cross references in the section.

---

bequest or devise forms the basis for a deduction. The amount of the deduction, in such case, is the value, at the date of the decedent's death, of the remainder interest in the money or property which is devised or bequeathed to charity. For the manner of determining the value of such remainder interest, see Article 20." 21 T. D. 783–784.

Article 20 prescribed methods of determining the present worth of a remainder subject to a single life interest.

The statute restricts charitable deductions to bequests to corporations "organized and *operated exclusively* for . . . charitable . . . purposes."[5] (Emphasis supplied.) Likewise, the above section of the regulations requires that the deductible value of "the beneficial interest in favor of" the designated charitable purpose be "severable from the interest in favor of the private use." There is no suggestion in the statute or in § 81.44 of a deduction of funds other than those later to be used exclusively for charitable purposes.

2. *Section 81.46 of Treasury Regulations 105 permits no deduction for a conditional bequest to charity "unless the possibility that charity will not take is so remote as to be negligible."*

Here, also, the regulations in their earliest form, in 1919, were unequivocally restrictive.[6] It was only after court

---

[5] Congressional insistence upon the actual use of the funds *exclusively* for charitable purposes appears in the following provisions describing the bequests that are deductible:

"The amount of all bequests . . . to or for the use of any corporation organized and *operated exclusively* for religious, charitable, scientific, literary, or educational purposes . . . *no part of the net earnings of which inures to the benefit of any private stockholder or individual* . . . or to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but *only if* such contributions or gifts are to be *used* . . . *exclusively* for religious, charitable, scientific, literary, or educational purposes . . . ." (Emphasis supplied.) I. R. C., § 812 (d).

[6] "Art. 56. Conditional bequests.—Where the bequest, legacy, devise, or gift is dependent upon the performance of some act, or the happening of some event, in order to become effective it is necessary that the performance of the act or the occurrence of the event shall have taken place before the deduction can be allowed. Where, by the terms of the bequest, devise or gift, it is subject to be defeated by a subsequent act or event, no deduction will be allowed." 21 T. D. 785.

decisions had demonstrated the need for doing so [7] that the restrictions were restated so as expressly to permit deductions of bequests assured in fact but conditional in form.

Section 81.46 now provides expressly that no deduction is allowable for a conditional bequest to charity "unless the possibility that charity will not take is so remote as to be negligible." The whole section is significant:

> "§ 81.46 *Conditional bequests.* (a) *If as of the date of decedent's death the transfer to charity is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that charity will not take is so remote as to be negligible.* If an estate or interest has passed to or is vested in charity at the time of decedent's death and such right or interest would be defeated by the performance of some act or the happening of some event which appeared to have been highly improbable at the time of decedent's death, the deduction is allowable.
>
> "(b) If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power." (Emphasis supplied.) 26 CFR.

Sections 81.44 and 81.46 fully implement § 812 (d) of the code. In their early forms they were obviously mu-

---

[7] *United States* v. *Provident Trust Co.,* 291 U. S. 272. See also, *Hoagland* v. *Kavanagh,* 36 F. Supp. 875; *Ninth Bank & Trust Co.* v. *United States,* 15 F. Supp. 951.

tually exclusive and easily reconcilable.  The predecessor of § 81.46 confined charitable deductions to outright, unconditional bequests to charity.  It expressly excluded deductions for charitable bequests that were subject to conditions, either precedent or subsequent.  While it encouraged assured bequests to charity, it offered no deductions for bequests that might never reach charity. Subsequent amendments have clarified and not changed that principle.  Section 81.46 (a) today yields to no condition unless the possibility that charity will not take is "negligible" or "highly improbable."  Section 81.46 (b) is equally strict.  It relates to provisions whereby funds may be diverted in whole or in part to non-charitable uses, and it limits the tax deduction to that portion of each fund that cannot be so diverted.  Where the principal of a bequest to charity thus may be invaded for private purposes, it is only the ascertainable and assured balance of the bequest to charity that is recognized for a tax deduction.

Respondent concedes that the chance that charity will not take is much more than negligible.  Therefore, if § 81.46 (a) applies to the instant case, no charitable deduction is permissible.

Respondent claims, however, that § 81.44 covers this case.  In doing so, it reads §§ 81.44 and 81.46 together and, instead of confining them to their mutually exclusive subjects, makes them overlap.  It applies § 81.44 to some deferred *conditional* bequests.  It does so in any case where it can compute, on approved actuarial standards, the degree of possibility that charity will receive the conditional bequest.  Respondent then computes the present value of a corresponding percentage of the entire deferred bequest.  In short, respondent claims an immediate tax deduction equal to the present value of whatever fraction of the bequest corresponds, actuarially, to the chance that charity may benefit from it.

This Court considered a somewhat comparable proposal in 1928. In *Humes* v. *United States,* 276 U. S. 487, a taxpayer sought a charitable deduction based on a bequest to charity that was conditional upon the death of decedent's 15-year-old niece, without issue, before reaching the age of 40. To sustain the proposal, the taxpayer sought to establish actuarially a measure of the chance that charity would receive the bequest and to find authority in the Revenue Code for the deduction of the present value of a corresponding percentage of the bequest. Speaking through Mr. Justice Brandeis, this Court found the actuarial computation inadequate. It, however, did not drop the matter there. It made the following statement:

> "One may guess, or gamble on, or even insure against, any future event. The Solicitor General tells us that Lloyds of London will insure against having twins. But the fundamental question in the case at bar, is not whether this contingent interest can be insured against or its value guessed at, but what construction shall be given to a statute. Did Congress in providing for the determination of the net estate taxable, intend that a deduction should be made for a contingency, the *actual* value of which cannot be determined from any known data? Neither taxpayer, nor revenue officer—*even if equipped with all the aid which the actuarial art can supply*—could do more than guess at the value of this contingency. *It is clear that Congress did not intend that a deduction should be made for a contingent gift of that character.*" (Emphasis supplied.) *Id.,* at 494.

Since the above was written, there have been advances in the actuarial art. Today, actuarial estimates are employed more widely than they were then. The computa-

tions now before us illustrate that advance. They do not, however, lessen the necessity for statutory authorization for such a tax deduction. The scope of the authority required by respondent can best be appreciated if examined in the revealing light of the specific circumstances of the present case.

The Tax Court and the Court of Appeals have approved respondent's actuarial computations as fairly reflecting the present value of one-half of a two-million-dollar residue, reduced in proportion to the chance that charity will receive it. In making this estimate, respondent has computed the present value of the deferred bequest on the basis of 4% interest compounded annually and has used the following actuarial tables:

1. To determine the joint life expectancy of decedent's wife and daughter, the Combined Experience Mortality Table prescribed in § 81.10 of the estate tax regulations.

2. To estimate the probability of remarriage of the daughter, the American Remarriage Table, published by the Casualty Actuarial Society.

3. To estimate the chance of a first child being born to decedent's daughter, a specially devised table which has been found by the Tax Court to have been prepared in accordance with accepted actuarial principles upon data derived from statistics published by the Bureau of the Census.[8]

---

[8] Despite the conclusions of the Tax Court and the Court of Appeals to the contrary, the Government contends here that the proposed actuarial value of the conditional remainder to charity does not support the deduction. We do not reach that issue, but the facts material to it are as follows: The Remarriage Table is based on a study of American experience conducted by a Committee of the Casualty Actuarial Society, 19 Proceedings of the Casualty Actuarial Society (1933), 279–349. The table is based solely upon the remarriage experience of widows who, through the deaths of their husbands, become beneficiaries under workmen's compensation laws in states

On the basis of these tables, the Tax Court finds that the present value of the charitable remainder at the death of decedent is .18384 on the dollar if computed solely on the chances of his daughter's remarriage; .24094 on the dollar if computed on the chance that a legitimate descendant of his daughter will survive her; and .24058 on the dollar if computed on the chance that any legitimate or illegitimate descendant of his daughter will survive her.    It is this last estimate that respondent seeks to apply here.

If respondent is successful, it means the allowance of an immediate and irrevocable deduction of over $175,000 from the gross estate of decedent, although respondent admits there is a real possibility that charity will receive nothing.    The bequest, in fact, offers to the daughter an inducement of about $2,000,000 to remarry and leave a descendant.    To the extent that this inducement reduces the actuarially computed average probability that charity will receive this bequest, it further demonstrates the inappropriateness of authorizing charitable tax deductions based upon highly conditional bequests to charity.

An even clearer illustration of the effect of respondent's interpretation of the code readily suggests itself.    If

---

where they lose compensation benefits upon remarriage.    The reports relied upon cover experience for policy years 1921 to 1929, inclusive. See *id.*, at 286–288, 298.    See also, Myers, Further Remarriage Experience, 36 Proceedings of the Casualty Actuarial Society (1949), 73 *et seq.*    The specially devised table as to the probability of issue is based upon statistics, for white women in 47 states and the District of Columbia, indicating the degree of probability that such women, after they are 27 years old, will marry and have first-born children. See the following Bureau of the Census publications for 1940; Vital Statistics of the United States, Pt. II, 89; Nativity and Parentage of the White Population—General Characteristics 110; Types of Families 9.    The instant computation assumes that such a child will survive its mother.    18 T. C. 836, 837–838.

decedent had here conditioned his bequest to charity solely on the death of his daughter before remarriage, the Remarriage Table would then fix the present value of the charitable remainder at .18384 on the dollar. The taxpayer would at once receive a substantial charitable deduction on that basis. The daughter, however, would have a $2,000,000 inducement to remarry. If she did so, her action would cancel the possibility that charity would receive anything from the bequest, but it would not cancel the tax deduction already allowed to the estate. To whatever extent any person can defeat the fulfillment of any condition upon which a benefit to charity depends, to that extent the actuarial estimate that such benefit will reach charity is less dependable. The allowance of such a tax reduction as is here sought would open a door to easy abuse. The result might well be not so much to encourage gifts inuring to the benefit of charity as to encourage the writing of conditions into bequests which would assure charitable tax deductions without assuring benefits to charity.

We find no suggestion of authority for such a deduction in § 812 (d). That section remains substantially the same as it was when *Humes* v. *United States, supra,* 276 U. S. 487, was decided. We also find no authorization for the deduction either in § 81.46 or § 81.44 of the regulations, as thus far discussed. This relegates respondent to the following words now in § 81.44 (d):

"If the present worth of a remainder bequeathed for a charitable use is dependent upon the termination of more than one life, or *in any other manner rendering inapplicable Table A or B of § 81.10,* the claim for the deduction must be supported by a full statement, in duplicate, of the computation of the present worth made, in accordance with the principle set forth in § 81.10, by one skilled in actuarial computations." (Emphasis supplied.)

In view of the statutory emphasis upon outright bequests and the long-standing exclusion of conditional bequests by § 81.46 of the regulations (and its predecessors), we do not regard the above sentence as now invading the domain of § 81.46 by extending the deduction to conditional bequests in a manner readily open to abuse. We regard the sentence as restricted to computations of deferred, but assured, bequests. Section 81.10 (i) now deals at length with the valuation of remainders and reversionary interests and gives many examples of such computations. Every example, however, is one of the valuation of an assured bequest. The additional language in § 81.44 (d), quoted above, does not authorize the deduction, and § 81.46 prohibits it. Such specific and established administrative interpretation of the statute is valid and "should not be overruled except for weighty reasons." *Commissioner* v. *South Texas Co.*, 333 U. S. 496, 501.

This Court has not specifically faced the issue now before us since *Humes* v. *United States, supra,* but we see no reason to retreat from the views there stated. This Court finds no statutory authority for the deduction from a gross estate of any percentage of a conditional bequest to charity where there is no assurance that charity will receive the bequest or some determinable part of it. Where the amount of a bequest to charity has not been determinable, the deduction properly has been denied. *Henslee* v. *Union Planters Bank,* 335 U. S. 595, 598–600; *Merchants Bank* v. *Commissioner,* 320 U. S. 256, 259–263; and see *Robinette* v. *Helvering,* 318 U. S. 184, 189. Where the amount has been determinable, the deduction has, with equal propriety, been allowed where the designated charity has been sure to benefit from it. *United States* v. *Provident Trust Co.,* 291 U. S. 272; *Ithaca Trust Co.* v. *United States,* 279 U. S. 151.

Some of the lower courts have squarely met the instant problem and denied the deduction. For example, the de-

duction was denied in the First Circuit where the court found that "it is not certain that the charity will take 50% of the corpus; only that it has a 50–50 chance of getting all or nothing." *Newton Trust Co.* v. *Commissioner,* 160 F. 2d 175, 181. See also, *Graff* v. *Smith,* 100 F. Supp. 42; *Hoagland* v. *Kavanagh,* 36 F. Supp. 875; *Wood* v. *United States,* 20 F. Supp. 197. The administrative practice, as evidenced here by the action of the Commissioner, has been to deny the deduction. See further, Paul, Federal Estate and Gift Taxation (1946 Supp.), 426–427.

The judgment of the Court of Appeals, accordingly, is reversed and the cause remanded for action in conformity with this opinion.

*Reversed.*

MR. JUSTICE REED, with whom MR. JUSTICE DOUGLAS joins, dissenting.

The facts are fully and fairly stated in the Court's opinion. Its statement of the legal issues accords with our understanding of the case, to wit:

"The question before us is what, if any, charitable deduction may be made despite (1) the deferment of the effective date of the charitable bequest until the deaths of both decedent's wife and daughter and (2) the conditioning of the bequest upon a lack of descendants of decedent's daughter surviving at that time."

The reason for dissenting, at some length, is that the Court's conclusion seems to disregard the words of the statute in question and to subvert the purpose of Congress in its enactment, that purpose admittedly being to encourage testamentary gifts to corporations organized for certain objects considered highly desirable for the good of our people.[1]  There is a certain hesitation in dissent-

---

[1] See note 3 of the Court's opinion.

ing from an interpretation of a tax statute remediable by Congress, but as the Court's decision springs, we think, from an overemphasis on regulations, a protest may have usefulness as a counterweight against future extensions of such treatment to statutory language.

*First.* The statute, 26 U. S. C. § 812 (d), allows as deductions from the gross estate the "amount of all bequests, legacies, devises, or transfers . . . to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes . . . ." There is no legislative history explanatory of its meaning.[2] If we read the quoted portion of § 812 alone, could there be any doubt that the Sternberger bequest is deductible? We think not. It says "all bequests"—whatever the charity takes under the will. There is not a word that limits the deduction of bequests to what assuredly goes to the institution. It is the "amount" of the bequest that is deductible—its presently ascertainable value. The statute plainly allows deferred charitable bequests. It does not require assured enjoyment.

Under the Court's interpretation, if a child were bequeathed his father's estate for life with remainder in default of issue to the recognized institutions, the full estate tax would have to be paid. On the other hand, if the estate were left simply to the child for life and then to the same institutions, the estate would be free from the tax on the present value of the remainder. Such a differentiation is not found in the statute. The Congress said that charitable bequests should be deductible. The valuation of the charitable interest in one instance would be greater than in the other; the tax less. But in each case the net estate would be reduced only by the present actuarial value of the charitable bequest. While particu-

---

[2] See note 2 of the Court's opinion.

lar estates would secure tax advantages under our interpretation, in the aggregate the charitable deductions should substantially equal the amount received by the tax-recognized institutions. This would surely fairly carry out the congressional purpose. To view respondent's contention as urging a possible over-all tax windfall for estates is to deny the mathematical law of averages.[3]

Our interpretation of the statute has support in the language of Treasury Regulation 105, § 81.44. After referring to the valuation of bequests whose value is presently ascertainable, the regulation adds:

> "If the present worth of a remainder bequeathed for a charitable use is dependent upon the termination of more than one life, or in any other manner rendering inapplicable Table A or B of § 81.10, the claim for the deduction must be supported by a full statement, in duplicate, of the computation of the present worth made, in accordance with the principle set forth in § 81.10, by one skilled in actuarial computations."

The tables refer to a remainder contingent on the termination of one life only. Section 81.44 alone would allow, in the light of the statutory language, a deduction for a contingent bequest, uncertain as to ultimate receipt. See the Court's opinion, *ante,* pp. 198 and 199. The Court does not follow this language of the Regulations because of § 81.46 and because of "statutory emphasis upon

---

[3] As the Court states the actuarial method and assumes by not reaching it, note 8 of the opinion, the correctness of the computation of the value of the conditional remainder to charity, we will merely add that this position accords with the conclusion of the Tax Court, 18 T. C. 836, and the Court of Appeals, 207 F. 2d 600, through its reliance on *Meierhof* v. *Higgins,* 129 F. 2d 1002, 1003, a case also involving the multiple-decrement theory. See Jordan, Life Contingencies, 251.

outright bequests." We find no such emphasis. The purpose of the statute leads us to the contrary result.[4]

The Court agrees, however, with the Government's contention that "it is immaterial whether the charity's contingent possibility of receipt can be valued as of the decedent's death." It holds that it is only when ultimate receipt must follow that § 812 (d) allows a deduction. Although the Government asserts its conclusion is upheld by our decisions, we do not think they so hold. In this Court five cases have touched upon the problem. Three of them were disposed of because of the failure to introduce, or the impossibility of making, a valuation upon sound actuarial principles.[5] None of them held that bequests are not deductible although the ultimate taking by the charitable beneficiary was uncertain.

Two—*Ithaca Trust Co.* v. *United States*, 279 U. S. 151, and *United States* v. *Provident Trust Co.*, 291 U. S. 272— allowed a deduction for conditional charitable bequests. The former because a right to invade the corpus was fixed by a standard capable of being stated in money and, as the income of the estate was ample for the needs of the

---

[4] See *Meierhof* v. *Higgins*, 129 F. 2d 1002, holding that the predecessors to §§ 81.44 and 81.46 are to be read together.

[5] *Humes* v. *United States*, 276 U. S. 487. It was there said:

"The Court of Claims did not find that the present value of the contingent bequests to the charities can be determined by the calculations of actuaries based upon experience tables. . . .

"If all the facts stated had been embodied in findings, no legal basis would be laid for the deduction claimed. The volume and character of the experience upon which the conclusions drawn from these two tables are based, differ from the volume and character of the experience embodied in standard mortality tables, almost as widely as possibility from certainty." 276 U. S., at 492–493.

The tables were based on the limited experience of male and female members of the Scotch peerage. *Merchants Bank* v. *Commissioner*, 320 U. S. 256; *Henslee* v. *Union Planters Bank*, 335 U. S. 595. Compare *Robinette* v. *Helvering*, 318 U. S. 184.

life beneficiary, there was no uncertainty sufficient to justify a refusal of the deduction for the charitable remainder. The latter is, on its face, a decision that would decide the issue, simpliciter, of the deductibility of contingent bequests. Neither is here controlling, however, since in both the charity was held to be assured of taking. The *Provident Trust* case is worth a moment's examination. Property was left by will in trust for the deceased's daughter for life; upon her death the corpus was to pass to her lawful issue; but should she die without issue, the estate was to be distributed among various charitable organizations. Prior to the death of the testator, an operation had rendered the daughter incapable of childbearing, assuring the vesting of the charitable remainder. This Court did not apply the then existing regulation (the predecessor to § 81.46 (d)) [6] which would have denied a deduction. It ignored the regulation, apparently believing it in conflict with the purpose of the statute, and allowed the deduction, thus requiring the amendment of the regulation to its present form. The Court stated the relevant inquiry to be as follows:

> "The sole question to be considered is—What is the value of the interest to be saved from the tax? That is a practical question, not concluded by the presumption invoked but to be determined by ascertaining in terms of money what the property constituting that interest would bring in the market,

[6] "Conditional bequests.—Where the bequest, legacy, devise, or gift is dependent upon the performance of some act, or the happening of some event, in order to become effective it is necessary that the performance of the act or the occurrence of the event shall have taken place before the deduction can be allowed. Where, by the terms of the bequest, devise or gift, it is subject to be defeated by a subsequent act or event, no deduction will be allowed." Treas. Reg. 37, Art. 56.

subject to such uncertainty as ordinarily attaches to such an inquiry. See *Ithaca Trust Co.* v. *United States* . . . ." 291 U. S., at 286.

Our conclusion is that the purpose of § 812 was to allow a deduction for charitable bequests that are capable of valuation at the time of death, although it is not certain that the gift will ultimately fall to the contingent beneficiary. See in accord *Meierhof* v. *Higgins,* 129 F. 2d 1002, a case in conflict with *Newton Trust Co.* v. *Commissioner,* 160 F. 2d 175, which ultimately led to the allowance of this certiorari. The purpose of § 812 and its background forbid, we think, a conclusion that Congress intended to exclude a deduction in those cases.

*Second.* The Government asserts and this Court agrees that although it is clear that § 812 allows a deduction for some contingent bequests, § 81.46 of the regulations limits those contingencies to instances where the "possibility that charity will not take is so remote as to be negligible." Clearly the possibility here is not "remote." The chances are against the charity taking. It is quite true that § 81.46 has survived reenactment of I. R. C., § 812, and that it can be interpreted as a limitation upon the deductibility of contingent remainders. However, we do not think such a ruling would be consistent with the purpose of Congress, manifested by I. R. C., § 812.

Whether the Regulations are written into the Estate Tax law by reenactment or are merely indicative of congressional purpose,[7] the deduction section and the regulations are to be interpreted in the light of the congressional purpose. Whatever may be the varying views as to the desirability of testamentary gifts of moneys or businesses

[7] Compare *Helvering* v. *Reynolds Co.,* 306 U. S. 110, 115; *Crane* v. *Commissioner,* 331 U. S. 1, 8, with *Helvering* v. *Wilshire Oil Co.,* 308 U. S. 90. See 54 Harv. L. Rev. 377, 398, 1311.

to public or private charitable foundations, Congress has sanctioned such provisions, vested or with certain degrees of contingency, by the deduction section of the Estate Tax.[8] The policy has brought munificent gifts to the chosen institutions.

If it were not for the reenactment of § 812 after the promulgation of § 81.46, we would have no hesitation in declaring it in conflict with the statute. Even in interpreting statutes when isolated provisions would produce results "plainly at variance with the policy of the legislation as a whole," we follow the purpose rather than the literal words. *United States* v. *American Trucking Assns.*, 310 U. S. 534, 543. That rule is applicable here. Regulations do not have the safeguards of federal statutory enactments. Interested parties outside the Internal Revenue Service perhaps may not be heard. Reports explaining the action are not available. Public discussion, such as happens in Congress, does not take place. In short, we think that reenactment of a statute after the due adoption of a regulation does not make the regulation a part of the statute. It is only an indication of congressional purpose to be weighed in the context and circumstances of the statutory language. In this instance the congressional purpose to encourage gifts to charity should not be frustrated by the issuance of a regulation.

For the foregoing reasons we would affirm the judgment of the Second Circuit.

---

[8] Griswold, Cases and Materials on Federal Taxation (3d ed.), 679, setting out the legislative history of the section with brief reference to the differing views on the merit of the charitable deduction; Paul, Federal Estate and Gift Taxation, Vol. I, c. 12.