**BUTLER BROTHERS, a corporation,**
**Plaintiff,**

**v.**

**Elmer F. KELM, Collector of Internal**
**Revenue, Defendant.**

**Civ. No. 4113.**

United States District Court
D. Minnesota, Fourth Division.

Sept. 22, 1955.

Francis D. Butler, St. Paul, Minn.,
for plaintiff.

George E. MacKinnon, U. S. Atty.,
St. Paul, Minn., for defendant.

DEVITT, District Judge.

This is a suit by taxpayer to recover war-time excess profits taxes allegedly overpaid for the tax years ending on April 30 of 1941, 1942 and 1943.

For the purpose of encouraging national production of certain strategic materials in short supply, including manganese, the Congress in enacting the excess profits tax law in 1940 permitted corporations mining these designated substances to receive a special exemption from the tax. The issue here is as to the method of computing and applying that exemption.

Prior to 1940 the taxpayer was principally engaged in the mining of iron ore on the Iron Range of Minnesota. With the war emergency it reopened some dormant manganese mines and commenced extracting the ore. A substantial profit was made during the taxable years 1941, 1942 and 1943. The corporation filed its federal excess profits tax and income returns and elected to use the Base Period Net Income method to calculate its excess profits tax credit. During this Base Period, 1936–1940, taxpayer's manganese mining operations had produced no income.

Following the filing of the returns in question, the Commissioner of Internal Revenue assessed deficiencies in the sum of about $100,000 which were thereafter paid by the taxpayer. He filed claims for refunds for each of the fiscal years. The claims were denied by the Commissioner and this action followed.

It is the contention of the taxpayer that it was Congress' intention to exempt from the payment of excess profits tax all income derived from the mining of strategic materials—in this case manganese—and that in the computation of the tax for the years in question the Commissioner has applied an arbitrary formula set up in Treasury Regulations 109, Section 30.731–1 and Treasury Regulations 112, Section 35.731–1, which does not give the taxpayer full statutory credit for manganese and iron mining profits. The taxpayer contends that the Commissioner's Regulations are arbitrary and unreasonable, and asks that they be set aside for that reason.

The Commissioner responds that the regulations he promulgated are in pursuance of the language used by the Congress, and that whereas the result to this taxpayer may be inequitable in this case, the method of computation is in accordance with the Congressional expression, and that he is powerless to assess the tax on any basis other than that required by the statutory language.

This case is unique in that there is no judicial precedent on the issue that can be found by either of the parties or by the Court. Apparently no controversy involving it has reached the courts since its enactment. Likewise, the legislative history summarized by the parties is largely inconclusive in so far as the specific problem here is concerned, although it is at least superficially apparent from a colloquy on the Senate floor between Senator Pitman of Nevada and Senator Harrison of Mississippi that no excess profits taxes were to be charged against the profits derived from strategic mining operations of the kind here involved.

The nub of the issue is as to how the portion of adjusted income attributable to strategic mining shall be computed. The exemption is provided for in Section 731 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 731. It provides that in the case of any taxpayer engaged in the mining of any strategic mineral, including manganese:

"* * * The portion of the adjusted excess profits net income attributable to such mining in the United States shall be exempt from the tax imposed by this subchapter. The tax on the remaining portion of such adjusted excess profits net income shall be an amount which bears the same ratio to the tax computed without regard to this section as such remaining portion bears to the entire adjusted excess profits net income."

We arrive now at the technical aspects of the problem. In computing the strategic mineral credit provided for by Section 731, supra, the Commissioner determined the "portion of the adjusted excess profits net income" exempt from tax under Section 731 by applying against taxpayer's adjusted excess profits net income a fraction whose numerator was taxpayer's unadjusted excess profits net income attributable to manganese mining, and whose denominator was taxpayer's total unadjusted excess profits net income.

The taxpayer asserts that this method is improper and that the fraction to be applied to determine its strategic mineral exemption is one whose numerator was taxpayer's unadjusted excess profits net income from manganese mining, and whose denominator was its total *adjusted* excess profits net income rather than, as the Commissioner used, taxpayer's total *unadjusted* excess profits net income.

To put it in another, if less accurate way, the Commissioner says that the exemption must be determined on the basis of *all* of taxpayer's income, strategic and nonstrategic alike: the taxpayer says it must be determined only upon the basis of his strategic income, otherwise the credit is being diluted, to his detriment, contrary to the Congressional purpose.

The excess profits tax law was enacted as Title II of the Second Revenue Act of 1940, 26 U.S.C.A., Internal Revenue Acts, page 22. This tax was based on the "adjusted excess-profits net income" and was fixed at variable rates up to 50 per cent. Section 710(a). The meaning of the term " 'adjusted excess profits net income' " is set out in Section 710(b). It is arrived at by subtracting from excess profits net income (1) a specific exemption of $5,000 and (2) a so-called excess profits tax credit, computed, at the election of the taxpayer, by either the Equity Invested Capital method or the Base Period Income method. (A third item which may be subtracted, involving a carry-over of tax credits, is not pertinent here.) The Equity Invested Capi-

tal method gave a credit based on the amount of capital invested in the corporation plus its accumulated earnings. The Base Period method gave a credit of the average earnings of the corporation over the so-called base period—to wit, 1935–1940. In this instance the taxpayer elected to use the Base Period method.

Section 731 which provides for the strategic minerals exemption is a part of the excess profits tax law enacted as a part of the Second Revenue Act of 1940. Hence, in determining the meaning of the expression "adjusted excess profits net income" in 731, we must be governed by the meaning given to the term by the earlier Section, 710(b), of the same enactment. As pointed out, this Section proscribes a deduction of the excess profits credit (in addition to the $5,000 exemption and another exemption not here pertinent), in arriving at the meaning of the term.

The Commissioner urges that the specific language of Section 731 and the general structure of the excess profits tax statute leads to the logical conclusion that the tax exemption for strategic mineral income is a benefit that is to be applied only after *adjusted* excess profits tax net income has been determined. The statute treats corporations mining strategic metals different from other corporations only by providing for this exemption from their *adjusted* income; it does not provide a different method for computing the adjusted income. Hence, in setting up the equation required to be set up by Section 731, the portion of adjusted income attributable to strategic mining is in the same proportion to the total adjusted income as the portion of unadjusted income attributable to mining is to the total unadjusted income.

The regulations promulgated by the Commissioner and the method of computing the tax in this case both follow the theory advanced by the Commissioner.

The question is whether or not his regulations and method of computation comport with the statutory language and the

**4**

Congressional intent, or if they are so unreasonable and violative of the statute as to require their being set aside.

I am satisfied from a reading of Section 731 in relation to the other provisions of the excess profits tax law, that the Commissioner's computation, based as it is on the taxpayer's unadjusted income, is not at variance with the wording of the statute. I doubt, however, in view of the monetary injustice which is worked upon this taxpayer (at least from hindsight), whether the apparent Congressional intent to exempt all strategic minerals income from the excess profits tax law is carried out by the language which the Congress employed. But I must be governed by the language which the Congress used, not the language which it should have used. Congress said that the portion of the *adjusted* excess profits net income attributable to strategic mining was to be exempt from the excess profits tax law, but by using the term "adjusted" they obligated the Commissioner, as the administrator of the law, to determine the adjusted excess profits net income attributable to strategic mining in the manner he did, and in consonance with the framework of the law.

This statute was first enacted in 1940. The Commissioner's regulations under it were promulgated shortly thereafter. The courts are bound to give great weight to the regulatory directions of the Commissioner of Internal Revenue. Treasury regulations must be sustained unless they are "unreasonable and plainly inconsistent with the revenue statutes" in that they are "contemporaneous constructions by those charged with administration of these statutes" and "should not be overruled except for weighty reasons." See Commissioner of Internal Revenue v. South Texas Co., 1948, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831; see also to the same effect Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 190, 75 S.Ct. 229 and Fawcus Machine Co. v. United States, 1931, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397.

Likewise, Congressional reenactment of the basic statutory provisions subsequent to the promulgation of the regulations by the Commissioner, as was done here, lends further weight to the regulations. Crane v. Commissioner, 1947, 331 U.S. 1, 8, 67 S.Ct. 1047, 91 L.Ed. 1301; see also Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 190, 75 S.Ct. 229 (two justices dissenting.)

On the basis of the foregoing considerations, the Court concludes that the regulations are not unreasonable or plainly inconsistent with the statute. They must be sustained.

Findings of fact, conclusions of law, order for judgment and form of judgment may be presented in accordance with this decision.