**4**

W. P. BOWERS, Former Collector of Internal Revenue, Appellant,

v.

SOUTH CAROLINA NATIONAL BANK OF GREENVILLE, SOUTH CAROLINA, and Marion M. Hewell, as Executors and Trustees of the Estate of Charles H. Yates, Appellees.

No. 7077.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 21, 1955.
Decided Dec. 14, 1955.

Carolyn R. Just, Atty., Dept. of Justice, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Lee A. Jackson, Attys., Dept. of Justice, Joseph E. Hines, U. S. Atty., Spartanburg, S. C., and W. A. Bull, Asst. U. S. Atty., Greenville, S. C., on the brief), for appellant.

J. Alex Neely, Jr., Anderson, S. C., and James L. Love, Greenville, S. C., for appellees.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and BRYAN, District Judge.

SOPER, Circuit Judge.

This appeal involves estate taxes in the amount of $97,074.19 and income taxes for the years 1944, 1945 and 1946 in the amount of $3,205.08 claimed by the United States to be due by the estate of Charles H. Yates, deceased, of Greenville, South Carolina. The crucial question is whether the estate, in the computation of the taxes, is entitled to a deduction of the residue of the decedent's property which was left in trust for charitable purposes by his will. The taxes claimed were paid by the executors of the estate and this suit was brought to secure a refund. The District Judge

decided in favor of the estate and the government appealed.

Charles H. Yates executed a will on January 18, 1940 and died on June 15, 1944, leaving a net estate of $311,081.59. By his will, after making certain minor bequests, his residence at Greenville was left to his two sisters, Carrie L. Yates and Daisy Yates McDavid, for their joint lives and the life of the survivor. The rest and the residue of the estate were devised and bequeathed to two trustees with full power of sale and reinvestment, to collect the income, and after paying all necessary expenses, to pay from said income $150 per month to each of the two sisters for life, and $25 per month to the testator's cousin, Parmie Bignon of Augusta, Georgia, until the death of the survivor of the sisters. The trustees were also directed to pay all expenses of the upkeep of the home place and all necessary medical and hospital expenses in case of the illness of either or both of the sisters from any cause. The trustees were given power to use the corpus of the estate for these purposes if the income should prove insufficient, and if the income should prove to be more than sufficient, the trustees were directed to add the surplus to the corpus.

The testator directed that upon the death of both sisters, the trustee should pay $1,000 to the cousin Parmie Bignon, $2,000 for a building or improvement at Greenacre in Greenville County, and $1,000 each to the Boy and Girl Scouts in Greenville. He then disposed of the rest of the estate in the following terms:

"The remainder of said trust estate shall be used by my said trustees, in their discretion, for some worthy charitable purpose. They may increase the amounts above indicated for the benefit of Greenacre, the Boy Scouts and the Girl Scouts, or they may dispose of any or all of said remainder to some other charitable or eleemosynary institution or for some other charitable purpose. The disposition of said remainder shall be absolutely in the discretion of said trustees. In the event there should not be sufficient funds remaining in the hands of my trustees at the time of the death of my two sisters to pay all of the bequests in this item, they shall dispose of whatever funds are in their hands in the order in which they are above indicated until said funds are exhausted.

Marion M. Hewell and the South Carolina National Bank were named as executors and trustees under the will.

One of the sisters, Carrie L. Yates, died in 1941 before the death of the testator. The other sister, Daisy Yates McDavid was sixty-five years of age when he died. A few days before his death the cousin, Parmie Bignon, came to live in the home and the testator on his deathbed entered into an agreement with her that if she would give up her employment in Augusta and live with Mrs. McDavid during her life, and be a sister to her, he would pay her the amount that she was earning in Augusta or more. The two women have lived in his residence since his death and both of them are in good health.

Subsequent to the testator's death the executors and trustees brought a suit in the Court of Common Pleas of the County of Greenville, South Carolina, joining Daisy Yates McDavid and Parmie Bignon as defendants,[1] to secure a construction of the will and particularly the rights of the two women and the duties of the trustees as to the monthly payments to be made to them and as to the expenditures for the upkeep of the home. After testimony was taken, the court decreed on August 8, 1944 that the payments to Mrs. McDavid should be increased from $150 to $300 per month for life, and that Parmie Bignon should

---

1. The charitable organizations entitled to share in the corpus of the estate upon the death of the sisters were not joined as parties in this suit since the income was more than enough to cover the additional payments.

be paid the sum of $25, as directed by the will, and the additional sum of $50 per month until the death of the surviving sister so long as the two women lived together. The court was of the opinion that the testator by leaving the sum of $150 per month to each of his sisters for life, had in mind that the sum of $300 per month was necessary for the maintenance of the home, and hence the increase of the allowance to the surviving sister to $300 was justified. The court further found that before the testator's death he had made the agreement with Parmie Bignon above described, and directed that on this account the trustees pay her the additional sum of $50 per month.

Subsequently, upon a supplemental petition filed by the executors and trustees, the court on February 10, 1945 authorized them to reimburse Mrs. McDavid for payments made by her in 1944 and to be made in subsequent years for federal and State income taxes. In doing so the court referred to the language of the residuary clause of the will above set out which directed the trustees to use the remainder of the trust estate for some worthy charitable purpose, saying that "the disposition of said remainder shall be absolutely in the discretion of said trustees." The court found support in these words for the conclusion that the testator vested discretion in the trustees to act as he would do if he were living.

On September 14, 1946, upon a third petition of the executors and trustees, the court ordered the trustees to pay all items of medical and hospital expenses of Parmie Bignon that had then accrued or which might accrue in the future so long as she would reside with Mrs. McDavid. The court also authorized the trustees to pay for the installation of an automatic oil heating furnace in the home and retained jurisdiction for additional relief or instructions.

The evidence shows that all the expenditures made upon the authority of these three decrees were taken from the income of the trust estate. The District Judge in the pending case found that the inventory showed a net estate of $311,081.59; that the annual income reasonably to be expected therefrom was $11,200; and that the actual income from June 15, 1944 to October 12, 1949 was $53,940.48 of which $35,284.36 was paid to the beneficiaries and $7,888.-11 was used to defray the expenses of administration, leaving an excess over the amount distributed of $10,768.01. During this period $10,606.40 was added to the corpus of the estate.

The court also found that the two women lived modestly and economically and in the same manner in which they were accustomed to live prior to the death of the testator; and that Mrs. McDavid owned a separate estate of the value of $29,250 which produced an income of $1,250 per year and that in addition she enjoyed a pension of $50 per month as the widow of a Spanish War veteran and that she had a life expectancy at the time of his death of 11.55 years.

The ultimate finding of fact by the District Judge was in the following words:

"The possibility that the corpus of the estate would be invaded for the benefit of the life beneficiaries is remote and it is as certain as human affairs can be made certain that charity will receive the entire corpus of the estate."

The court's conclusion of law was that the claimed deduction should be allowed and judgment was accordingly given for the plaintiffs.

The decision is governed by § 812(d) of the Internal Revenue Code 1939, 26 U.S.C.A. § 812(d), which provides in substance that in determining the value of the net estate of a resident of the United States for the purpose of the estate tax, there shall be deducted from the value of the gross estate the amount of all devises and bequests to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary or educational

purposes, and all devises and bequests to trustees for such purposes, provided no part of the net earnings of the charitable enterprise inures to the benefit of any private stockholder or individual and no substantial part of its activities consists of carrying on propaganda or otherwise attempting to influence legislation.

■ Treasury Regulations 105, §§ 81.44 and 81.46 which have the force of law, Commissioner v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, outline the requirements for such a deduction. Section 81.44 provides that if a trust is created for both a private and a charitable purpose, the value of the beneficial interest may be deducted insofar as it is presently ascertainable and hence severable from the interest in favor of the private use. Section 81.46 provides as follows:

> "Sec. 81.46. *Conditional bequests.* —If as of the date of decedent's death the transfer to charity is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that charity will not take is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of decedent's death and such right or interest would be defeated by the performance of some act or the happening of some event which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable.

> "If the legatee, devisee, donee or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised or given by the decedent, deductions will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power."

The government's position is based on the circumstances that the will provided for both private and charitable beneficiaries, and that the trustees were directed during the lifetime of the sisters to use the income of the trust estate to make the monthly payments to them and to the cousin, and to pay their medical and hospital expenses if they should fall ill, and to pay all the expenses of the maintenance and upkeep of the home, and if the income should prove insufficient for these purposes, to make up the deficiency from the corpus of the estate. The government also relies on the liberal interpretation given to the will by the Court of Greenville County when it authorized the trustees to make additional payments out of the income of the estate as above described, and commented upon the broad discretion vested in the trustees by the testator.

Specifically the government contends that the District Judge was wrong in his finding that it was as certain as human affairs can be that the entire corpus of the estate will go to charity. This is the touchstone for it was held in the leading case on this question, Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647, that the right to deduct the value of a charitable bequest of the residue of an estate is not lost merely because the will gives authority to use the principal of the estate to supplement the income payable to a wife of the testator for life, if it be necessary to do so, in order to maintain her in as much comfort as she was accustomed to enjoy. The court sustained the right to the deduction in these words, 279 U.S. at page 154, 49 S.Ct. at page 291:

> "The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator and even after debts and specific legacies had been

paid was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs." [2]

The rule of this case has been given expression in § 81.46 of the Regulations where it is said that a deduction for a conditional bequest to charity is not allowable *unless the possibility that the charity will not take is so remote as to be negligible*—and conversely, that if an estate is vested in charity at the decedent's death and would be defeated by the happening of some event which then *appeared to have been highly improbable*, the deduction is allowable.

We think that the District Judge was right in finding as a fact that the amount of the bequest was definitely fixed for practical purposes at the time of the testator's death or to use the words of § 81.44 of the Regulations, "that the value of the beneficial interest was then presently ascertainable."

The evidence clearly shows that the income from the corpus was much in excess not only of the total annual payments to the private beneficiaries but also of the expenses of maintenance and improvement of the residence, even after the amount of these payments had been increased by the order of the state court. Moreover, there is no reasonable ground to believe that the expenses in the future authorized by the court would exceed the income from the trust estate. It is true that the amounts fixed by the will were thereby enlarged in accordance with what the court found to be the intention of the testator; but the actual holding of the court was confined to the expenditure of income as distinguished from principal.

The trustees do not have the broad power under the will to use the corpus of the trust as they see fit during the lifetime of the sisters. They have wide discretion to dispose of the remainder of the property for charitable purposes upon the death of the life beneficiaries, but it is only then that they are clothed with power to select the charities to be benefited. There was no holding to the contrary by the state court for that question indeed was not before it, and its reference to the language of the residuary clause had no other purpose than to show the confidence which the testator reposed in their judgment. It was made plain to the state court both in the petition and in the evidence before it that there was no need to encroach upon the principal of the estate and the court so found. Our conclusion is that the judgment of the District Court on this point was justified by the facts before it.

This conclusion requires also the affirmance of the judgment of the District Court that the estate is entitled to a refund for the overpayment of income taxes for the years 1944, '45 and '46. Treasury Regulations 111 § 29.162-1 provides for the deduction from the gross income of the estate in computing income taxes of any part of the gross income for the tax year which is permanently set aside during the year for charitable purposes. The will in the pending case specifically provided that if the annual income from the estate should be more than sufficient to pay the expenses and monthly payments to the sisters and the cousin, the surplus should become part of the corpus of the trust estate and as such disposed of for charitable purposes as directed in the residuary clause. The evidence shows that the executors and trustees have acted in accordance with this direction and have transferred the surplus in each year to the principal account. Thereby the sur-

2. See Helvering v. Union Trust Co., 4 Cir., 125 F.2d 401; Commissioner of Internal Revenue v. Robertson's Estate, 4 Cir., 141 F.2d 855; Cf. Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667; Merchants National Bank of Boston v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35; Henslee v. Union Planters Nat. Bank, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259; Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229.

plus was transferred permanently to the fund to be ultimately distributed for charitable purposes.

Affirmed.

