**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ESTATE OF ANNE Y. PETTER,
deceased; TERRENCE D. PETTER,
personal representative,
        *Petitioners-Appellees,*

v.

COMMISSIONER OF INTERNAL
REVENUE,
        *Respondent-Appellant.*

No. 10-71854

Tax Ct. No.
25950-06

OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
June 14, 2011—San Francisco, California

Filed August 4, 2011

Before: Diarmuid F. O'Scannlain, Ferdinand F. Fernandez,
and Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

## COUNSEL

Jonathan S. Cohen and Andrew M. Weiner (argued), Department of Justice, Washington, D.C., for the respondent-appellant.

John W. Porter (argued), Kerri D. Brown, and Jeffrey D. Watters, Jr., Baker Botts L.L.P., Houston, Texas, for the petitioners-appellees.

## OPINION

BYBEE, Circuit Judge:

Anne Y. Petter ("Taxpayer" or "Anne") transferred membership units in a family-owned LLC partly as a gift and partly by sale to two trusts and coupled the transfers with simultaneous gifts of LLC units to two charitable foundations. The transfer documents include both a dollar formula clause —which assigns to the trusts a number of LLC units worth a specified dollar amount and assigns the remainder of the units to the foundations—and a reallocation clause—which obligates the trusts to transfer additional units to the foundations if the value of the units the trusts initially receive is finally determined for federal gift tax purposes to exceed the specified dollar amount. Based on an initial appraisal of the LLC units, each foundation received a particular number of units. But after an Internal Revenue Service ("IRS") audit determined that the units had been undervalued, the foundations discovered they would receive additional units. Everyone agrees that the Taxpayer is entitled to a charitable deduction equal to the value of the units the foundations initially received. But is the Taxpayer also entitled to a charitable deduction equal to the value of the additional units the foundations will receive? The Tax Court answered that she was. We agree.

I

After inheriting a large amount of United Parcel Service ("UPS") stock, Anne devised a complex estate plan designed to give some of her wealth to charity and as much of her stock

as she could to two of her children, Donna and Terry, without having to pay gift tax. To accomplish these goals, the Taxpayer first created the Petter Family LLC ("PFLLC"), a Washington limited liability company, and transferred approximately $22.6 million worth of UPS stock to it in exchange for membership units in the PFLLC. Then, the Taxpayer created the Donna K. Moreland 2001 Long Term Trust, which named Donna as trustee, and the Terrence D. Petter 2001 Long Term Trust, which named Terry as trustee, and transferred PFLLC units to these two trusts.[1] This appeal centers around these latter transfers, which are discussed in more detail below.

Because Anne did not want to pay gift tax in connection with the transfer of LLC units to the trusts, the transfers were coupled with simultaneous donations of units to two tax-exempt public charities[2] and occurred in two phases: first a gift, then a sale. On March 22, 2002, the Taxpayer gave the trusts PFLLC units equal in value to the unused portion of her unified tax exemption.[3] On the advice of her estate planner,

---

[1]Anne could have transferred her UPS stock outright, but doing so would have "enabled the Commissioner to tax her on its full value—UPS stock is publicly traded and easy to price." *Petter v. Comm'r*, 98 T.C.M. (CCH) 534, 2009 WL 4598137, at *7 (2009). Conversely, "a gift of membership units in an LLC is harder to value [and] creates the possibility of a more taxpayer-friendly valuation" because "provisions in the operating agreement restrict members' rights to sell" LLC units. *Id.* These restrictions allow a taxpayer to discount the value of stock by a percentage that reflects the lack of marketability of LLC units. *Id.*

[2]Aside from effectuating Anne's charitable intent, coupling the transfers of LLC units to the trusts with simultaneous transfers of LLC units to charities created what Anne's estate planner, Richard LeMaster, called a "charitable freeze." A charitable freeze is an estate planning technique that seeks to ensure that if the IRS successfully challenges a taxpayer's valuation of a gift, the amount by which the gift was undervalued does not go to the IRS as estate or gift tax, but rather to one or more charities named by the donor in the transfer documents.

[3]A taxpayer does not owe any gift tax if the value of the gift is less than the applicable annual exclusion (the annual exclusion for 2002 was

Richard LeMaster, these units served as a baseline that limited the amount of units later sold to the trusts; specifically, the units transferred as a gift were meant to make up 10% of the trusts' assets.[4] On March 25, 2002, Anne sold the trusts additional PFLLC units that, when added to the units already transferred as a gift, were worth 90% of the trusts' assets.[5] As consideration for the LLC units, each trust executed a 20-year promissory note, undertaking to pay $4,085,910 at 5.37% interest in quarterly installments of $83,476.30. The trusts have made regular quarterly payments since July 2002.

As regards the March 22 gifts, there were two sets of gift documents: one for Donna's trust, which named it and the Kitsap Community Foundation as transferees, and one for Terry's trust, which named it and the Seattle Foundation as transferees. The relevant sections of Terry's gift document—Recital C, the dollar formula clause (section 1.1), and the reallocation clauses (sections 1.2 and 1.3)—provide:

> C. Transferor wishes to assign 940 Class T Membership Units in the Company (the "Units") including all of the Transferor's right, title and interest in the economic, management and voting rights in the Units as a gift to the Transferees.

---

$11,000). If the value of the gift exceeds the applicable annual exclusion, the taxpayer may still avoid paying gift tax by using her lifetime unified tax credit (the unified tax credit for 2002 exempted $1 million from tax). Any portion of the unified tax credit not used against gift tax may be used after the taxpayer's death against the estate tax. *See generally* I.R.S. Publ'n 950 (Dec. 14, 2009).

[4]LeMaster believed there was a rule of thumb that a trust whose debts do not exceed 90% of the value of its assets (i.e., a trust with at least a 10% capital base) would be viewed by the IRS as a legitimate, arm's-length purchaser in the later sale of LLC units.

[5]At the time of the transfers, the unused portion of the Taxpayer's unified tax exemption was $907,820. Applying LeMaster's rule of thumb, this number meant that Anne could give to each trust LLC units worth $453,910 and then sell to each trust LLC units worth $4,085,190.

. . . .

1.1 Subject to the terms and conditions of this Agreement, Transferor:

1.1.1. assigns to the Trust as a gift the number of Units described in Recital C above that equals one-half the [maximum] dollar amount that can pass free of federal gift tax by reason of Transferor's applicable exclusion amount allowed by Code Section 2010(c). Transferor currently understands her unused applicable exclusion amount to be $907,820, so that the amount of this gift should be $453,910; and

1.1.2 assigns to The Seattle Foundation as a gift . . . the difference between the total number of Units described in Recital C above and the number of Units assigned to the Trust in Section 1.1.1.

1.2   The Trust agrees that, if the value of the Units it initially receives is finally determined for federal gift tax purposes to exceed the amount described in Section 1.1.1, Trustee will, on behalf of the Trust and as a condition of the gift to it, transfer the excess Units to The Seattle Foundation as soon as practicable.

1.3 The Seattle Foundation agrees that, if the value of the Units the Trust initially receives is finally determined for federal gift tax purposes to be less than the amount described in Section 1.1.1, The Seattle Foundation will, as a condition of the gift to it, transfer the excess Units to the Trust as soon as practicable.

Donna's gift document substitutes Class D units for Class T units and the Kitsap Community Foundation for the Seattle Foundation, but is otherwise identical.

As regards the March 25 sales, there were also two sets of sale documents: one for Donna's trust, which named it and the Seattle Foundation as transferees, and one for Terry's trust, which named it and the Seattle Foundation as transferees. The relevant sections of Terry's sale document—Recital C, the dollar formula clause (section 1.1), and the reallocation clauses (sections 1.2 and 1.3)—provide:

> C. Transferor wishes to assign 8,459 Class T Membership Units in the Company (the "Units") including all of Transferor's right, title and interest in the economic, management and voting rights in the Units by sale to the Trust and as a gift to The Seattle Foundation.
>
> . . . .
>
> 1.1 Subject to the terms and conditions of this Agreement, Transferor:
>
>> 1.1.1 assigns and sells to the Trust the number of Units described in Recital C above that equals a value of $4,085,190 as finally determined for federal gift tax purposes; and
>>
>> 1.1.2 assigns to The Seattle Foundation as a gift . . . the difference between the total number of Units described in Recital C above and the number of Units assigned and sold to the Trust in Section 1.1.1.
>
> 1.2 The Trust agrees that, if the value of the Units it initially receives is finally determined to

exceed $4,085,190, Trustee will, on behalf of the Trust and as a condition of the sale to it, transfer the excess Units to The Seattle Foundation as soon as practicable.

1.3 The Seattle Foundation agrees that, if the value of the Units the Trust initially receives is finally determined to be less than $4,085,190, The Seattle Foundation will, as a condition of the gift to it, transfer the excess units to the Trust as soon as practicable.

Donna's sale document substitutes Class D units for Class T units, but is otherwise identical.

Shortly after these documents were executed, LeMaster requested that Moss Adams Advisory Services, a Seattle valuation firm, determine the fair market value of the membership units as of the transfer dates. Moss Adams concluded that the fair market value was $536.20 per unit. Based on this appraisal, the Kitsap Community Foundation received 93.47 units, the Seattle Foundation received 1773.91 units, and Terry's and Donna's trusts each received 8465.31 units.

The Taxpayer filed a Form 709 gift tax return for 2002, which reported no gift tax liability as a result of the transfers. The return listed gifts of $453,910 each to Donna's trust and Terry's trust; gifts worth $50,128, $450,618, and $450,618 to the Seattle Foundation; and a gift worth $50,128 to the Kitsap Community Foundation. Along with her return, Anne included a disclosure statement and supporting documents detailing the nature of the gifts as transfers of LLC units subject to defined-value allocations and reallocations "if the value of the . . . Units transferred was later finally determined for federal gift tax purposes to differ from the estimated value as determined by the Moss Adams appraisal." The Taxpayer further disclosed that "the value of the limited liability company [as reflected in the Moss Adams appraisal] is based on

the fair market value of the underlying assets with a 46% non-marketability discount and a 13.3% net asset value adjustment applied."

The IRS audited the return in 2005 and concluded that the LLC units had been undervalued. Specifically, the IRS determined that the correct value was $794.39 per unit. From the IRS's perspective, this higher valuation had two significant gift tax consequences. First, it meant that the Taxpayer had underreported the value of the units transferred as gifts to the trusts and, accordingly, that the Taxpayer's gifts exceeded the unused portion of her lifetime unified tax exemption. Second, it meant that the shares sold to the trusts were sold for "less than full and adequate consideration," and thus were transferred partly by sale and partly by an additional $1,967,128 gift to each trust, computed by deducting the price of the installment notes from the fair market value of the shares transferred. Additionally, the IRS concluded that the dollar formula clauses were void as against public policy and refused to allow the Taxpayer to take an additional charitable deduction for the value of the additional units that would pass to the foundations following the upward valuation. As a result of its audit, the IRS issued a notice of tax deficiency for $2,115,797.

The Taxpayer petitioned the United States Tax Court for a redetermination of the deficiency. Approximately two weeks before trial, Anne and the IRS settled the valuation issue by stipulating that the value of the LLC units was $744.74 per unit at the time of the transfer. As a result of the stipulated value and the reallocation clauses of the transfer agreements, the Seattle Foundation and the Kitsap Community Foundation must receive an additional 4503.82 units and 237.04 units, respectively, from the trusts. After a trial, the tax court determined that the Taxpayer was entitled to a charitable deduction based on the value of the additional LLC units the foundations will receive. Specifically, the tax court held that the dollar formula clauses used to effect the additional transfers were not

void as against public policy and that the foundations' receipt of additional units was not subject to a condition precedent. *Petter v. Comm'r*, 98 T.C.M. (CCH) 534, 2009 WL 4598137, at *16-17 (2009). The IRS has timely appealed from the tax court's decision to this court, though the IRS now argues only that part of the gifts to the foundations were subject to a condition precedent—an IRS audit—in violation of Treasury Regulation 25.2522(c)-3(b)(1).

## II

We review the tax court's findings of fact for clear error and its conclusions of law de novo. *Xilinx, Inc. v. Comm'r*, 598 F.3d 1191, 1194 (9th Cir. 2010). Whether a gift is "dependent upon . . . a precedent event," Treas. Reg. § 25.2522(c)-3(b)(1), is a question of law that we review de novo.

## III

**[1]** Although gifts are generally taxable, taxpayers may deduct "the amount of all gifts made . . . to or for the use of" a charitable organization from the total amount of taxable gifts made during the relevant calendar year. I.R.C. § 2522(a). However, no charitable deduction is allowed "[i]f, as of the date of the gift, a transfer for charitable purposes is dependent upon the performance of some act or of the happening of a precedent event in order that [the transfer] might become effective." Treas. Reg. § 25.2522(c)-3(b)(1). Here, the IRS argues that "[t]he adjustment feature of the defined-value clauses—requiring the trusts to transfer additional LLC units to the foundations, if the value of the units, as 'finally determined for federal gift tax purposes,' exceeds a defined value —make the additional charitable gifts subject to the occurrence of a condition precedent": an IRS audit that ultimately determines that the reported value of the LLC units is too low. Accordingly, the IRS claims that Treasury Regulation § 25.2522(c)-3(b)(1) disallows the additional charitable

deduction at issue in this case—the charitable deduction the Taxpayer claims as a result of the post-audit reallocation of units between the foundations and the trusts.

[2] A condition precedent is one that must occur before a transfer to a charity "become[s] effective." Treas. Reg. § 25.2522(c)-3(b)(1); *cf. Wien Consol. Airlines, Inc. v. Comm'r*, 528 F.2d 735, 737 n.4 (9th Cir. 1976) (stating that a condition precedent is, in contract law, "one which 'must exist before a duty of immediate performance arises,' " or, in property law, one that is "necessary for an estate to vest") (citations omitted). We do not think that the dollar formula clauses in the Taxpayer's transfer documents contain a condition precedent. Contrary to the IRS's argument, the Taxpayer's transfer documents do not make the additional transfers of LLC units to the foundations dependent upon the occurrence of an IRS audit. Rather, the Taxpayer's transfers became effective immediately upon the execution of the transfer documents and delivery of the units.[6] The only possible open question was the value of the units transferred, not the transfers themselves.

[3] The dollar formula clauses of the gift documents assign to each of the two foundations the difference between 940 units and "the number of Units . . . that equals [$453,910]." Thus, if X is the value of an LLC unit, these clauses assign

---

[6]Although "[a] mere promise to make a gift is not enforceable" under Washington law, a completed gift is. *Oman v. Yates*, 422 P.2d 489, 494 (Wash. 1967). "The essential elements of a [completed] gift are: (1) an intention on the part of the donor to presently give; (2) a subject matter capable of passing by delivery; and (3) an actual delivery at the time." *Henderson v. Tagg*, 412 P.2d 112, 115 (Wash. 1966). Here, these elements are clearly met: Anne intended to make a gift, LLC units can pass by delivery, and the units were delivered (most likely when the transfers were recorded on the PFLLC's books). *See id.* (stating that "[w]ith respect to the requirement of delivery, the modern rule is far more flexible than the traditional concept of manual delivery applied by early-day courts" and "delivery may be either actual, constructive, or symbolical" (citation omitted)).

to each foundation 940 - (453,910/X) units. Similarly, the two dollar formula clauses of the sale documents assign to one foundation—the Seattle Foundation—the difference between 8459 units and "the number of Units . . . that equals a value of $4,085,190 as finally determined for federal gift tax purposes." Thus, each clause assigns to the Seattle Foundation 8459 - (4,085,190/X) units. Under the terms of all dollar formula clauses, the foundations receive a set number of LLC units; there are no contingencies that must be satisfied before the transfers to the foundations become effective.

**[4]** The IRS, however, points out that the transfer agreements impose an obligation on the trusts to transfer excess units to the foundations if the value of Units the trusts receive by gift is finally determined for federal gift tax purposes to exceed $453,910 or if the value of the Units the trusts receive by sale is finally determined to exceed $4,085,190. In the IRS's view, these reallocation clauses—which were triggered once the IRS determined and the Taxpayer agreed that the LLC units had been undervalued—establish that "the gifts of the additional units to the foundations were dependent upon an IRS audit and a successful challenge of the value of the units as too low" because "[o]nly then do the foundations have a right to the additional units." We disagree. Although the reallocation clauses require the trusts to transfer excess units to the foundations if it is later determined that the units were undervalued, these clauses merely enforce the foundations' rights to receive a pre-defined number of units: the difference between a specified number of units and the number of units worth a specified dollar amount. And that particular number of LLC units was the same when the units were first appraised as when the IRS conducted its audit because the fair market value of an LLC unit at a particular time never changes. Thus, the IRS's determination that the LLC units had a greater fair market value than what the Moss Adams appraisal said they had in no way grants the foundations rights to receive additional units; rather, it merely ensures that the foundations receive those units they were already entitled to

receive. The number of LLC units the foundations were entitled to was capable of mathematical determination from the outset, once the fair market value was known.

[5] Ultimately, the IRS argues that because the foundations would not have received the additional units but for the IRS audit, the additional transfer of units to the foundations was dependent upon a condition precedent. Adopting the IRS's "but for" test would revolutionize the meaning of a condition precedent. In one sense, the IRS is correct that but for its audit, the foundations would not have obtained additional LLC units, but that is because the IRS believed the estimated value was not the true fair market value. Either of the trusts or either of the foundations could also have challenged the Moss Adams valuation of the LLC units, although it was unlikely that they would have done so. But this practical reality does not mean that the foundations' rights to additional LLC units were contingent *for their existence* upon the IRS audit. Treasury Regulation § 25.2522(c)-3(b)(1) asks whether a transfer "is dependent upon . . . a precedent event in order that it might *become effective*," not whether a transfer is dependent upon the occurrence of an event so that the transferred assets actually change hands. An analogy to a simple contract illustrates this point. Consider a contract between A and B, in which A agrees to pay B $1000 in exchange for B's services. If A enters into this contract knowing that he has no intention to pay and if B then performs his side of the bargain, B will receive the $1000 only if he sues A in court. But for B's lawsuit, B would not receive the money he deserves. But B's filing of the lawsuit—though an event that must occur for B to be paid—is not a condition precedent to B's receiving the $1000. That is so because B's entitlement to this sum is in no way dependent upon the filing of a lawsuit; A's duty to perform arose when B performed under the contract.

Citing I.R.C. § 2001(f)(2), the IRS further argues that a value as finally determined for gift tax purposes means the value shown on a taxpayer's return, unless the IRS conducts

a timely audit and challenges that value. Because the Taxpayer used the term "as finally determined for federal gift tax purposes," the IRS claims that rather than transferring a particular number of units whose fair market value added up to the dollar amounts specified in the transfer agreements, the Taxpayer actually transferred a particular number of units whose pre-defined value—$536.20 per unit, the value reported on the Taxpayer's gift tax return—added up to those dollar amounts. "And at that value, the foundations had rights to 1,773.91 and 93.47 units, and no more. The additional 4,503.82 and 237.04 units that the foundations subsequently were to receive were the result of the audit and the parties' agreement that the value of each unit was $744.74."

**[6]** But the Taxpayer's transfer agreements do not specify the value of an individual LLC unit. The gift documents assign to each of the two foundations the difference between 940 units and "the number of Units . . . that equals [$453,910]," while the sale documents assign to one foundation the difference between 8459 units and "the number of Units . . . that equals a value of $4,085,190 *as finally determined for federal gift tax purposes*." Aside from the fact that only the dollar formula clause of the sale documents uses the phrase "as finally determined for federal gift tax purposes," a taxpayer who files a return cannot conjure up a value for federal gift tax purposes out of thin air; rather, she must use federal gift tax valuation principles. Under these principles, the value of an asset "as finally determined for federal gift tax purposes" is the fair market value of that asset. *See* Treas. Reg. § 25.2512-1 ("[I]f a gift is made in property, its value . . . is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts."); *cf. Succession of McCord v. Comm'r*, 461 F.3d 614, 627 n.34 (5th Cir. 2006) ("There is no material difference between fair market value determined under Federal gift tax valuation principles and fair market value as finally determined for Federal gift tax pur-

poses." (citation and internal quotation marks omitted)). Thus, the Taxpayer did not transfer to the foundations the number of units equal to a defined dollar amount divided by $536.20; rather, she transferred the number of units equal to the defined dollar amount divided by the fair market value of a unit. The Moss Adams appraisal confirms this point; it states, on the first page, that its purpose "is to express an opinion of the *fair market value* of the [units]."

[7] There are two additional problems with the government's reliance on I.R.C. § 2001(f)(2). First, although this section does state that "a value shall be treated as finally determined for purposes of [the gift tax chapter] . . . if . . . the value is shown on the return . . . and such value is not contested by the Secretary," *id.* § 2001(f)(2)(A), this definition applies "[f]or purposes of paragraph (1)," *id.* § 2001(f)(2). Paragraph (1), in turn, addresses the valuation of gifts in a particular circumstance: "if the time has expired . . . within which a tax may be assessed under [the gift tax chapter]." *Id.* § 2001(f)(1). In such circumstance, it makes sense to treat the value of a gift as the value reported on the taxpayer's return since, after all, the statute of limitations for assessing gift tax has passed. But I.R.C. § 2001(f)(2) does not purport to specify what is meant by a value "as finally determined for federal gift tax purposes" where the IRS may still assess tax. Second, I.R.C. § 2001(f)(2) also provides that "a value shall be treated as finally determined for purposes of [the gift tax chapter] if . . . the value is determined by a court." This language is broad enough to encompass the value of an LLC unit determined by a Washington court in an action by the foundations challenging the Moss Adams valuation as too low. *See Oman*, 422 P.2d at 493-94 (holding that the donee may enforce a completed gift). Accordingly, we reject the IRS's assertion that a value as finally determined for gift tax purposes is necessarily the value a taxpayer reports on her return.

[8] The result we reach—that Treasury Regulation § 25.2522(c)-3(b)(1) does not bar the charitable deduction at

issue in this case—is consistent with the Eighth Circuit's decision in *Estate of Christiansen v. Comm'r*, 586 F.3d 1061 (8th Cir. 2009), which involved an estate tax regulation similar to § 25.2522(c)-3(b)(1). In *Christiansen*, the decedent's will left her estate to her only child and "provided that twenty-five percent of any disclaimed amounts were to go to a charitable foundation." *Id.* at 1062. After the taxpayer's death, her daughter disclaimed her interest in the estate as to all amounts over $6.35 million "as finally determined for federal estate tax purposes" and the estate filed a tax return that indicated the estate had a particular value. *Id.* After the IRS challenged "the amount reported as the estate's overall value" on the estate's tax return, "[t]he parties eventually settled regarding a substantially increased valuation for the estate." *Id.* This higher valuation "resulted in a corresponding increase in the valuation of the contribution to the charitable foundation," but the IRS "denied the estate an increased charitable deduction." *Id.* The IRS argued that "because the overall value of the estate was not finally determined at the time of [the decedent's] death, but only after the Commissioner's partially successful challenge, the transfer to the foundation was, ultimately, 'dependent upon the performance of some act or the happening of a precedent event' in violation of Treasury Regulation § 20.2055-2(b)(1)." *Id.* Accordingly, the IRS sought to limit the estate's charitable deduction to the amount originally claimed on the estate tax return.

**[9]** The Eighth Circuit held that Treasury Regulation § 20.2055-2(b)(1) "is clear and unambiguous and it does not speak in terms of the existence or finality of an accounting valuation at the date of death or disclaimer. Rather, it speaks in terms of the existence of *a transfer* at the date of death." *Id.* Applying the regulation to the case at hand, the court then stated that "all that remained uncertain following the disclaimer was the valuation of the estate, and therefore, the value of the charitable donation." *Id.* at 1063. But "[t]he foundation's right to receive twenty-five percent of those amounts in excess of $6.35 million was certain." *Id.* Additionally, the

court observed that the IRS "fails to distinguish between events that occur post-death that change the actual value of an asset or estate and events that occur post-death that are merely part of the legal or accounting process of determining value at the time of death." *Id.* Although "the estate and the IRS bickered about the value of the property being transferred," this bickering did not mean that "the transfer itself was contingent in the sense of dependent for its existence on a future event." *Id.* (citation omitted). The court adopted the tax court's view that "[r]esolution of a dispute about the fair market value of assets on the date [the decedent] died depends only on a settlement or final adjudication of a dispute about the past, not the happening of some event in the future." *Id.* (internal quotation marks omitted). We agree with the Eighth Circuit's reasoning and find that it is equally applicable to this case.

The IRS offers three reasons to disregard *Christiansen*, but none are persuasive. First, the IRS argues that I.R.C. § 2518(a)—which provides that a qualified disclaimer relates back to the time of death by allowing the disclaimed amounts to pass as though the initial transfer had never occurred— ensured in *Christiansen* that "the disclaimed property passed to the foundation at the time of the decedent's death as opposed to being subject to a post-mortem condition precedent." As the IRS explains, "this 'relation-back' rationale is inapplicable in the instant case, which does not involve a qualified disclaimer." However, it is clear from reading *Christiansen* that the court's analysis focused on the word "transfer" in Treasury Regulation § 20.2055-2(b)(1), a regulation that closely mirrors the one applicable in this case. Though I.R.C. § 2518(a) buttressed the court's reasoning, it did not control the outcome. *See Christiansen*, 586 F.3d at 1062-63. Second, the IRS argues that the Eighth Circuit "relied on language in Treas. Reg. § 20.2055-2(e)(2)(vi)(a), an estate tax regulation that has no parallel in the gift tax regulations." We agree, but that regulation did not determine the outcome of the case; Treasury Regulation § 20.2055-2(b)(1)'s language

did. *See Christiansen*, 586 F.3d at 1062 ("[Treasury Regulation § 20.2055-2(b)(1)] is clear and unambiguous and it does not speak in terms of the existence or finality of an accounting valuation at the date of death or disclaimer. Rather, it speaks in terms of the existence of *a transfer* at the date of death."). Third, the IRS argues that *Christiansen* was wrongly decided because the court "overlooked the critical point that, but for the increase in the value of the estate 'as finally determined for federal estate tax purposes,' the foundation would not have had the right to any property beyond what it initially received." This is the same argument the IRS presses here, and we have already addressed it above.

**[10]** The IRS next argues that "[t]he application of Treas. Reg. § 25.2522(c)-3(b)(1) [to this case] is confirmed by long-standing Supreme Court precedent that a charitable deduction is allowable only with respect to amounts that charities are assured of receiving." But as *Christiansen* recognized, the Supreme Court cases the IRS relies on do not "stand for the proposition that deductions are to be disallowed if valuations involve lengthy or disputed appraisal efforts or if the Commissioner's actions in challenging a return result in determination of an adjusted value." 586 F.3d at 1063. For example, in *Humes v. United States*, 276 U.S. 487 (1928), the Court disallowed a deduction for a gift a charity would have received if the decedent's niece died childless before the age of 40. *Id.* 492-94. Similarly, in *Comm'r v. Estate of Sternberger*, 348 U.S. 187 (1955), the Court disallowed a deduction where a bequest to charity was dependent upon the testator's daughter dying without descendants. *Id.* at 187-88, 199-200. In both of these cases, the charities had only a future interest in the donor's gifts because the gifts were contingent upon someone dying without begetting issue; in other words, a future event—having children—could have defeated the gifts to the charities. By contrast, the Taxpayer's gifts in this case were not contingent upon any future event; as discussed above, the Taxpayer assigned to the trusts and the foundations, on the date the transfer agreements were executed, that

number of LLC units whose fair market value added up to certain defined values.

**[11]** Ultimately, the cases cited by the IRS stand for the unremarkable proposition that "[w]here the amount of a bequest to charity has not been determinable, the deduction properly has been denied." *Estate of Sternberger*, 348 U.S. at 199. But "[w]here the amount has been determinable, the deduction has, with equal propriety, been allowed." *Id.* Here, the Taxpayer's gifts to the foundations fall within the latter category. The foundations received a particular number of units: that number of units whose fair market value on the date of the transfers added up to a defined dollar amount. Because the fair market value of an LLC unit on a particular date is a constant, the foundations received gifts of a determinable amount. Therefore, Supreme Court precedent does not foreclose the Taxpayer's entitlement to a charitable deduction for the full value of her gifts.

Finally, the IRS argues that public policy supports the application of Treasury Regulation § 25.2522(c)-3(b)(1). Because, as we explained above, the regulation's text clearly does not preclude the charitable deduction at issue in this case, public policy cannot save the IRS. Accordingly, we need not address the government's numerous public policy concerns.[7]

---

[7]Before the tax court, the IRS made a separate, stand-alone public policy argument unrelated to Treasury Regulation § 25.2522(c)-3(b)(1). Relying on *Comm'r v. Procter*, 142 F.2d 824 (4th Cir. 1944), the IRS argued that the Taxpayer was not entitled to a charitable deduction for the additional units the foundations will receive because the Taxpayer's dollar formula clauses and reallocation clauses are void as against public policy. Although the Taxpayer's estate addresses this argument extensively in its answering brief, the IRS has now abandoned it because the IRS explicitly disclaims pursuing this argument on appeal. Accordingly, we do not address whether the Taxpayer's dollar formula clauses and reallocation clauses are void as against public policy. *See Wilcox v. Comm'r*, 848 F.2d 1007, 1008 n.2 (9th Cir. 1988) (holding that arguments made before the tax court but not pursued on appeal have been waived); *McCord*, 461 F.3d at 623 (holding that the IRS waived its void-as-against-public-policy argument where it made this argument before the tax court but chose not to pursue it on appeal).

*Cf. United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1731 (2011) ("Even were some hardship to be shown, considerations of policy divorced from the statute's text and purpose could not override its meaning.").

\* \* \* \* \*

**[12]** Contrary to the IRS's argument, the additional transfer of LLC units to the foundations was not subject to a condition precedent within the meaning of Treasury Regulation § 25.2522(c)-3(b)(1). Under the terms of the transfer documents, the foundations were always entitled to receive a predefined number of units, which the documents essentially expressed as a mathematical formula. This formula had one unknown: the value of a LLC unit at the time the transfer documents were executed. But though unknown, that value was a constant, which means that both before and after the IRS audit, the foundations were entitled to receive the same number of units. Absent the audit, the foundations may never have received all the units they were entitled to, but that does not mean that part of the Taxpayer's transfer was dependent upon an IRS audit. Rather, the audit merely ensured the foundations would receive those units they were always entitled to receive. Accordingly, we hold that Treasury Regulation § 25.2522(c)-3(b)(1) does not bar a charitable deduction equal to the value of the additional units the foundations will receive. "[W]e expressly invite[ ] the Treasury Department to 'amend its regulations' if troubled by the consequences of our resolution of th[is] case." *Mayo Found. for Med. Educ. & Research v. United States*, 131 S. Ct. 704, 713 (2011) (quoting *United Dominion Indus., Inc. v. United States*, 532 U.S. 822, 838 (2001)).

AFFIRMED.