T.C. Memo. 2012-88


UNITED STATES TAX COURT


JOANNE M. WANDRY, DONOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ALBERT D. WANDRY, a.k.a. A. DEAN WANDRY,  DONOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10751-09, 10808-09.        Filed March 26, 2012.


<u>William N. Krems</u>, <u>Steven R. Anderson</u>, and <u>Richard D. D'Estrada</u>, for petitioners.

<u>Patricia A. Komor</u> and <u>Philip E. Blondin</u>, for respondent.

MEMORANDUM OPINION

HAINES, Judge:  These cases arise from petitions for redetermination filed in response to notices of deficiency (deficiency notices) issued to petitioner Albert Wandry and petitioner Joanne Wandry for 2004.  The issues for decision are:  (1) whether petitioners transferred gifts of a specified dollar value of membership units or fixed percentage interests in Norseman Capital, LLC, a Colorado limited liability company, to their children and grandchildren in 2004; and (2) whether petitioners' transfer documents are void for Federal tax purposes as against public policy.

Background

The parties submitted these cases fully stipulated pursuant to Rule 122.[1]  The stipulations of facts and the attached exhibits are incorporated herein by this reference.  At the time they filed their petitions, petitioners lived in Colorado.

In 1998 petitioners formed the Wandry Family Limited Partnership, a Colorado limited liability limited partnership (Wandry LP), contributing cash and marketable securities.  Petitioners sought the advice of their tax attorney regarding

_____

[1]All section references are to the Internal Revenue Code (Code), as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.  Amounts are rounded to the nearest dollar.

the gift tax consequences of making transfers to their children and grandchildren (donees). They were advised that they could institute a tax-free gift-giving plan through transfers of Wandry LP partnership interests by using their annual gift tax exclusions of $11,000 per donee under section 2503(b) and additional gifts in excess of their annual exclusion of up to $1 million for each petitioner under section 2505(a) (Federal gift tax exclusions). Petitioners' tax attorney was also a certified public accountant (C.P.A.) with 9 years of practice in public accounting and 19 years of practicing law.

On January 1, 2000, petitioners began a gift-giving program using Wandry LP partnership interests. Petitioners' tax attorney informed them that the number of partnership units equal to the desired value of their gifts on any given date could not be known until a later date when a valuation could be made of Wandry LP's assets. As a result, petitioners' tax attorney advised them to give gifts of a specific dollar amount, rather than a set number of Wandry LP partnership units. He further advised them that all gifts should be transferred on December 31 or January 1 of a given year so that a midyear closing of the books would not be required. The Wandry LP partnership interest transfers are not at issue in these cases.

In April 2001 petitioners and their children started a family business.  As part of this new business, on August 7, 2001, petitioners and their children formed Norseman Capital, LLC, a Colorado limited liability company (Norseman).  The Norseman operating agreement provided that Mr. Wandry was its initial manager charged with managing its business and affairs and that the profits and losses of the company would be allocated in proportion to each member's capital account.

By 2002 all of Wandry LP's assets had been transferred to Norseman.  As a result, petitioners continued their gift-giving program through Norseman.  As with the gift-giving program with Wandry LP, petitioners' tax attorney advised them that: (1) the number of Norseman membership units equal to the desired value of their gifts on any given date could not be known until a later date when a valuation could be made of Norseman's assets; (2) all gifts should be given as specific dollar amounts, rather than specific numbers of membership units; and (3) all gifts should be given on December 31 or January 1 of a given year so that a midyear closing of the books would not be required.

On January 1, 2004, petitioners executed separate assignments and memorandums of gifts (gift documents).  Each gift document provides:

> I hereby assign and transfer as gifts, effective as of January 1, 2004, a sufficient number of my Units as a Member of Norseman Capital,

LLC, a Colorado limited liability company, so that the fair market value of such Units for federal gift tax purposes shall be as follows:

| Name | Gift Amount |
|------|-------------|
| Kenneth D. Wandry | $261,000 |
| Cynthia A. Wandry | 261,000 |
| Jason K. Wandry | 261,000 |
| Jared S. Wandry | 261,000 |
| Grandchild A | 11,000 |
| Grandchild B | 11,000 |
| Grandchild C | 11,000 |
| Grandchild D | 11,000 |
| Grandchild E | 11,000 |
| | 1,099,000 |

Although the number of Units gifted is fixed on the date of the gift, that number is based on the fair market value of the gifted Units, which cannot be known on the date of the gift but must be determined after such date based on all relevant information as of that date. Furthermore, the value determined is subject to challenge by the Internal Revenue Service ("IRS"). I intend to have a good-faith determination of such value made by an independent third-party professional experienced in such matters and appropriately qualified to make such a determination. Nevertheless, if, after the number of gifted Units is determined based on such valuation, the IRS challenges such valuation and a final determination of a different value is made by the IRS or a court of law, the number of gifted Units shall be adjusted accordingly so that the value of the number of Units gifted to each person equals the amount set forth above, in the same manner as a federal estate tax formula marital deduction amount would be adjusted for a valuation redetermination by the IRS and/or a court of law.

The paragraph following the list of the donees[2] and their gift amounts is hereinafter referred to as the adjustment clause. Petitioners' tax attorney drafted the gift documents.

The only gifts with respect to Norseman membership units that petitioners ever intended to give were of dollar amounts equal to their Federal gift tax exclusions. At all times petitioners understood and believed that the gifts were of a dollar value, not a specified number of membership units. Petitioners' tax attorney advised them that if a subsequent determination revalued membership units granted, no membership units would be returned to them. Rather, accounting entries to Norseman's capital accounts would reallocate each member's membership units to conform to the actual gifts.

Petitioners hired Kreisman & Williams, P.C. (K&W), an independent appraiser, to value Norseman's assets as of January 1, 2004. On July 26, 2005, K&W issued its report, concluding that a 1% Norseman membership interest was worth $109,000.

An undated and handwritten ledger from Norseman's C.P.A., titled "Norseman Capital, LLC 1998-2007 Gifts" (capital account ledger), indicates that

---

[2]Because each of petitioners' grandchildren is a minor, their names have been redacted from the record. We therefore list them as grandchild A-E.

certain accounting entries were made to Norseman's capital accounts in 2004. Specifically, the capital account ledger states that petitioners' combined capital accounts decreased by $3,603,311 in 2004. The capital account ledger indicates that this decrease is attributable to petitioners' combined gifts to the donees, resulting in increases to the Norseman capital accounts of each of petitioners' children and grandchildren of approximately $855,745 and $36,066, respectively. The only other evidence on record of Norseman's capital account adjustments in 2004 is Norseman's 2004 Form 1065, U.S. Return of Partnership Income, which includes each member's Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., listing each of their beginning and end of year capital account balances.

Petitioners' C.P.A. prepared a 2004 Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return, for each petitioner (gift tax returns). Consistent with the gift documents, each gift tax return reported total gifts of $1,099,000 and the schedules supporting the gift tax returns reported net transfers from each petitioner of $261,000 and $11,000 to their children and grandchildren, respectively. However, the schedules describe the gifts to petitioners' children and grandchildren as 2.39% and .101% Norseman membership interests, respectively (gift descriptions). Petitioners' C.P.A. derived the gift descriptions

from the dollar values of the gifts listed in the gift documents and the gift tax returns and the $109,000 value of a 1% Norseman membership interest as determined by the K&W report.

In 2006 the Internal Revenue Service (IRS) examined petitioners' gift tax returns. The IRS determined that the values of the gifts exceeded petitioners Federal gift tax exclusions. The deficiency notices were issued on February 4, 2009, determining a deficiency that was based on gifts of 2.39% and .101% Norseman membership interests to each of petitioners' children and grandchildren, respectively, valued at $366,000 and $15,400, respectively. The IRS and petitioners now agree that as of January 1, 2004, 2.39% and .101% Norseman membership interests were worth $315,800 and $13,346, respectively.

## Discussion

### I. Framing the Issues

Section 2501 imposes a tax on the transfer of property by gift by an individual. This tax applies whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible. Sec. 2511. The Federal gift tax exclusions apply to reduce the tax imposed by section 2501. More specifically, section 2503(b) provides that in computing gifts for the taxable year, a donor may exclude the first $10,000 of

gifts,[3] other than gifts of future interests in property, made to any person during the calendar year. For 2004 section 2505(a) provided for an additional lifetime exclusion of $1 million for each donor.

Respondent argues that petitioners are liable for the tax imposed by section 2501 because they transferred completed gifts of fixed percentage interests to the donees and the gifts exceed petitioners' Federal gift tax exclusions. Respondent presents three arguments to support this conclusion: (1) the gift descriptions, as part of the gift tax returns, are admissions that petitioners transferred fixed Norseman percentage interests to the donees; (2) Norseman's capital accounts control the nature of the gifts, and Norseman's capital accounts were adjusted to reflect the gift descriptions; and (3) the gift documents themselves transferred fixed Norseman percentage interests to the donees. Respondent further argues that the adjustment clause does not save petitioners from the tax imposed by section 2501 because it creates a condition subsequent to completed gifts and is void for Federal tax purposes as contrary to public policy. See Commissioner v. Procter, 142 F.2d 824, 827-828 (4th Cir. 1944), rev'g a Memorandum Opinion of this Court.

---

[3]The annual exclusion amount is subject to a cost-of-living adjustment. See sec. 2503(b)(2). For 2004 the annual exclusion was $11,000. See Rev. Proc. 2003-85, 2003-2 C.B. 1184.

Petitioners argue that they did not transfer fixed Norseman percentage interests to the donees. Rather, they transferred Norseman percentage interests to the donees equal in value to the amounts set forth in the gift documents. They further argue that respondent's public policy concerns do not apply to the adjustment clause. We review each of respondent's arguments in turn.

## II. Defining the Gifts

### A. Gift Descriptions as Admissions

Statements made in a tax return signed by a taxpayer may be treated as admissions. Lare v. Commissioner, 62 T.C. 739, 750 (1974), aff'd without published opinion, 521 F.2d 1399 (3d Cir. 1975). In Estate of Hall v. Commissioner, 92 T.C. 312, 337-338 (1989), we held that amounts reported on a Federal estate tax return are admissions and that lower values could not be substituted absent "cogent proof" that the reported values were erroneous. We have applied this same principle to cases involving Federal gift tax returns. See Mooneyham v. Commissioner, T.C. Memo. 1991-178. This cogent proof principle is essentially synonymous with the general burden of proof set forth in Rule 142(a). See generally Frazee v. Commissioner, 98 T.C. 554, 561-562 (1992).

Respondent argues that the gift descriptions, as part of petitioners' gift tax returns, are binding admissions that petitioners transferred fixed Norseman percentage interests to the donees. Respondent cites Knight v. Commissioner, 115 T.C. 506 (2000), as controlling. In Knight, as in the cases at hand, the taxpayers entered into a gift-giving plan for the benefit of their children using a partnership. The transfer document in Knight stated that the taxpayers transferred gifts to their children of partnership interests with a value of $300,000. However, on the taxpayers' gift tax returns, they reported gifts to each of their children of 22.3% interests in the partnership. The taxpayers' gift tax returns did not report a dollar value associated with the partnership interests. The Commissioner determined the fair market value of a 22.3% interest in the partnership to be greater than $300,000 and issued a notice of deficiency. At trial the taxpayers claimed that their gifts were actually worth less than $300,000.

In Knight, we held that by arguing at trial that the gifts were worth less than $300,000, the taxpayers opened the door to our consideration of the Commissioner's argument that the gifts were worth more than $300,000. As a result, we held that the taxpayers' gift tax returns showed their disregard for the transfer document and that they intended to give their children 22.3% interests in the partnership.

Petitioners have not similarly opened the door to respondent's argument. At all times petitioners understood, believed, and claimed that they gave gifts equal to $261,000 and $11,000 to each of their children and grandchildren, respectively. In Knight, the taxpayers' gift tax returns did not report dollar value gifts. In the cases at hand, although respondent relies on the gift descriptions as the basis for the alleged admissions, petitioners' gift tax returns were consistent with the gift documents. Petitioners' gift tax returns reported gifts with a total value equal to $1,099,000, and the schedules supporting petitioners' gift tax returns reported net transfers with a value of $261,000 and $11,000 to petitioners' children and grandchildren, respectively. Petitioners' C.P.A. merely derived the gift descriptions from petitioners' net dollar value transfers and the K&W report. Therefore, petitioners' consistent intent and actions prove that dollar amounts of gifts were intended.

B.    Capital Accounts

Respondent next argues that Norseman's capital accounts control the nature of the gifts transferred from petitioners to the donees, and that Norseman's capital accounts reflect gifts of fixed percentage interests. In applying a provision of Federal tax law, State law controls in determining the nature of a taxpayer's legal interest in property. United States v. Nat'l Bank of Commerce, 472 U.S.

713, 722 (1985); United States v. Mitchell, 403 U.S. 190, 197 (1971).  State law creates legal interests, while Federal law determines when and how those interests shall be taxed.  Mitchell, 403 U.S. at 197.

Under Colorado law, the elements of a valid inter vivos gift are:  (1)  a clear and unmistakable intention to make the gift and (2) the consummation of such intention by those acts which the law requires to divest the donor and invest the donee with the right of property.  Thomas v. Thomas, 197 P. 243 (Colo. 1921).  Acceptance by the donee is also an essential element even though it is often presumed and need not always be proved.  Bunnell v. Iverson, 364 P.2d 385 (Colo. 1961).

The parties do not dispute that petitioners completed valid gifts to the donees on January 1, 2004.  However, respondent argues that we must look to Norseman's capital accounts to determine just what property rights were divested from petitioners and invested in the donees.  Respondent cites Thomas, a stock ownership dispute between a husband and wife.  Mr. Thomas claimed that he was the owner of corporate stock which was listed on the books of the corporation as belonging to Mrs. Thomas.  He claimed that he had previously transferred the stock to his wife for convenience only but he was still the owner.  The court held

that Mr. Thomas gave a completed gift to Mrs. Thomas because when shares have been transferred on the corporate books, title has passed.

Respondent argues that Colorado law would view partnership interests similarly and that Norseman's capital accounts control the transfer. Because the capital accounts control the transfer and Norseman's capital account adjustments reflected a transfer consistent with the gift descriptions, respondent argues that we are compelled to conclude that petitioners transferred fixed Norseman percentage interests to the donees. Respondent supports this argument with the general principle that many of the rights a partner is entitled to in a partnership flow from that partner's capital account. In fact, the Norseman operating agreement provides that its members' shares of profits and losses are allocated according to their capital accounts. Respondent argues that a determination that the gifts were inconsistent with Norseman's capital accounts would be contrary to fundamental principles of the Federal tax system because it would render Norseman's capital accounts "tentative" until a final adjudication. Respondent correctly observes that Norseman's operations were not suspended on January 1, 2004, and that its capital accounts controlled its allocations, distributions, voting rights, and tax reporting. Respondent argues that if petitioners prevail it will likely require the preparation and filing of numerous corrective returns.

Respondent's reliance on Thomas is misplaced. Thomas is a case about whether and when a gift of corporate stock is complete, and it has no bearing on the nature of petitioners' gifts. We do not find respondent's argument to be persuasive. The facts and circumstances determine Norseman's capital accounts, not the other way around. Book entries standing alone will not suffice to prove the existence of the facts recorded when other more persuasive evidence points to the contrary. See Stralla v. Commissioner, 9 T.C. 801, 819 (1947) (partnership interests designated as belonging to certain individuals on the partnership books and records found to belong to someone else on the basis of facts and circumstances); Offord v. Commissioner, T.C. Memo. 1961-159 (capital account entries on the books of a partnership were not sufficient to prove the existence of a partner). In fact, the Commissioner routinely challenges the accuracy of partnership capital accounts, resulting in reallocations that affect previous years. If the Commissioner is permitted to do so, it can be said that a capital account is always "tentative" until final adjudication or the passing of the appropriate period of limitations. Accordingly, Norseman's capital accounts do not control the nature of petitioners' gifts to the donees.

Even if we agreed with respondent's capital accounts argument, respondent has failed to provide any credible evidence that the Norseman capital accounts

were adjusted to reflect the gift descriptions. The only evidence in the record of any adjustments to Norseman's capital accounts in 2004 is the capital account ledger and the Norseman's members' Schedules K-1, neither of which provides credible support to respondent's argument. The capital account ledger is undated and handwritten. There is no indication that it represents Norseman's official capital account records, and it does not reconcile with any of petitioners' or respondent's determinations. The capital account ledger is unofficial and unreliable. With respect to the Schedules K-1, they do not provide any information outside of each member's beginning and end of year capital account balances. They do not account for the portions of these adjustments attributable to petitioners' gifts. Therefore, respondent's argument fails in both law and fact.

C.     The Gift Documents

Respondent's final argument raises an old issue that has evolved through a series of cases where the Commissioner has challenged a taxpayer's attempt to use a formula to transfer assets with uncertain value at the time of the transfer. Respondent relies on Procter, which we have previously described as the "cornerstone of a body of law" regarding impermissible transfer clauses. Estate of Petter v. Commissioner, T.C. Memo. 2009-280, aff'd, 653 F.3d 1012 (9th Cir.

2011). In Procter, the donors assigned gifts of remainder interests in two trusts to their children pursuant to the following clause:

> [I]n the event it should be determined by final judgment or order of a competent federal court of last resort that any part of the transfer in trust hereunder is subject to gift tax, it is agreed by all the parties hereto that in that event the excess property hereby transferred which is decreed by such court to be subject to gift tax, shall automatically be deemed not to be included in the conveyance in trust hereunder and shall remain the sole property of [the taxpayer] * * *

Commissioner v. Procter, 142 F.2d at 827.

The Court of Appeals for the Fourth Circuit held that the clause at issue operated to reverse a completed transfer in excess of the gift tax. Id. at 827-828. The clause was therefore invalid as a condition subsequent to the donor's gift. Id. The Court of Appeals further held that the clause was contrary to public policy because: (1) any attempt to collect the tax would defeat the gift, thereby discouraging efforts to collect the tax; (2) the court would be required to pass judgment upon a moot case; and (3) the clause would reduce the court's judgment to a declaratory judgment. Id. at 827.

We have since invalidated other attempts to reverse completed gifts in excess of the Federal gift tax exclusions. See Ward v. Commissioner, 87 T.C. 78 (1986) (invalidating a clause that provided for a retroactive adjustment to the

completed transfer of a fixed number of shares of corporate stock to escape any imposition of gift tax); Harwood v. Commissioner, 82 T.C. 239 (1984) (giving no effect to a clause requiring an adjustment to a completed gift of an 8.89% partnership interest if it is "finally determined" for gift tax purposes that the gift was worth more than $400,000), aff'd without published opinion, 786 F.2d 1174 (9th Cir. 1986).

On the other hand, Federal Courts have held valid formulas used to limit the value of a completed transfer. See Estate of Christiansen v. Commissioner, 130 T.C. 1 (2008) (holding valid a clause disclaiming a beneficiary's rights to the value of her mother's estate in excess of $6,350,000, with the disclaimed amounts going to charitable organizations), aff'd, 586 F.3d 1061 (8th Cir. 2009); Estate of Petter v. Commissioner, T.C. Memo. 2009-280; see also McCord v. Commissioner, 461 F.3d 614 (5th Cir. 2006) (holding that a gift is valued on the date of the gift and subsequent events are off limits, the Court of Appeals for the Fifth Circuit respected the plain language of a clause transferring partnership interests to the taxpayers' children having a "fair market value" of $6,910,933; anything in excess of that up to $134,000 to a local symphony, and the remainder to a charity), rev'g 120 T.C. 358 (2003).

In <u>King v. United States</u>, 545 F.2d 700 (10th Cir. 1976), the Court of Appeals for the Tenth Circuit held for a taxpayer who used a formula similar to the one used in <u>Procter</u>. The clause at issue in <u>King</u> adjusted the purchase price of a specified number of corporate shares sold from a taxpayer to trusts created for the benefit of his children if the IRS determined the fair market value of those shares to be different from that determined on the sale date. Under the rule laid down in <u>Golsen v. Commissioner</u>, 54 T.C. 742 (1970), <u>aff'd</u>, 445 F.2d 985 (10th Cir. 1971), we must follow Tenth Circuit precedent. However, we do not believe that <u>King</u> is squarely on point, and therefore we do not believe it is controlling in the cases at hand. Most notably, the "price adjustment" clause in <u>King</u> provided for an adjustment to the consideration the trusts paid in the sale, not the stock transferred. Further, because the transaction was a sale, and not a gift, the Court of Appeals did not address the public policy arguments.

In <u>Estate of Petter v. Commissioner</u>, T.C. Memo. 2009-280, we held valid a clause transferring gifts totaling 940 membership units in a family LLC to a trust and a charitable foundation. The operative language of the transfer documents provided that the transferor:

> "assigns to the Trust as a gift the number of Units * * * that equals one-half the minimum dollar amount that can pass free of federal gift tax by reason of Transferor's applicable exclusion amount allowed

by Code Section 2010(c). Transferor currently understands her unused applicable exclusion amount to be $907,820, so that the amount of this gift should be $453,910; and

* * * assigns to * * * [the charitable foundation] as a gift to the * * * [charitable foundation] the difference between the * * * [940 Units] and the number of Units assigned to the Trust * * *"

Id.[4]

The transfer documents further provided that if the value of the membership units the trust initially receives is "finally determined for federal gift tax purposes" to exceed $453,910, the trust must transfer the excess units to the charity. Id. If, on the other hand, the value of the membership units the trust initially receives is "finally determined for federal gift tax purposes" to be less than $453,910, the charity will transfer the excess units to the trust. Id.

In Estate of Petter we examined Procter and other relevant cases to draw a distinction between a "savings clause", which a taxpayer may not use to avoid the tax imposed by section 2501, and a "formula clause", which is valid. Id. A savings clause is void because it creates a donor that tries "to take property back". Id. On the other hand, a "formula clause" is valid because it merely transfers a

---

[4]The taxpayers also executed similar transfer documents executing a sale and gift of 8,459 total membership units. An unknown number of membership units with a value equal to $4,085,190 were sold to the trust, rather than granted as a gift, and the remaining membership units were granted as gifts to the charities.

"fixed set of rights with uncertain value". Id. The difference depends on an understanding of just what the donor is trying to give away. Id.

In Estate of Petter we held that the plain language of the transfer documents provided that the donors transferred an "ascertainable dollar value of stock" and not "a specific number of shares or a specific percentage interest" in the LLC. Id. In other words, the clauses at issue were valid formula clauses because the "ascertainable dollar value of stock" transferred was a fixed set of rights even though the units themselves had an unknown value.

On appeal, the Commissioner argued only that the taxpayers were not entitled to a charitable contribution deduction for any additional units transferred to the charities pursuant to section 25.2522(c)-3(b)(1), Gift Tax Regs., which provides that no deduction is allowed if a transfer "is dependent upon the performance of some act or of the happening of a precedent event in order that [the transfer] might become effective". Estate of Petter v. Commissioner, 653 F.3d at 1018. The Commissioner argued that the IRS audit was a condition precedent to the completed transfer.

The Court of Appeals for the Ninth Circuit disagreed, holding that although the value of each membership unit was unknown on that date, the value of a membership unit on any given date is a constant. Id. at 1023. Therefore, under

the terms of the clauses at issue, the charities received a fixed number of

membership units, and there were no contingencies for the transfers to be effective.

Id. at 1019.

Respondent argues that the cases at hand are distinguishable from Estate of

Petter.  Rather than transferring a fixed set of rights with an uncertain value,

respondent argues that petitioners transferred an uncertain set of rights the value of

which exceeded their Federal gift tax exclusions.  Respondent further argues that

the clauses at issue are void as savings clauses because they operate to "take

property back" upon a condition subsequent.

Respondent does not interpret Estate of Petter properly.  The Court of

Appeals described the nature of the transfers and the reallocation provision of the

clause at issue in Estate of Petter as follows:

> Under the terms of the transfer documents, the foundations were
> always entitled to receive a predefined number of units, which the
> documents essentially expressed as a mathematical formula.  This
> formula had one unknown:  the value of a LLC unit at the time the
> transfer documents were executed.  But though unknown, that value
> was a constant, which means that both before and after the IRS audit,
> the foundations were entitled to receive the same number of units.
> Absent the audit, the foundations may never have received all the
> units they were entitled to, but that does not mean that part of the
> Taxpayer's transfer was dependent upon an IRS audit.  Rather, the
> audit merely ensured the foundations would receive those units they
> were always entitled to receive. * * *

Id. at 1023. We apply each part of the Court of Appeals' description above to petitioners' gifts:

> Part I: "Under the terms of the transfer documents, the foundations were always entitled to receive a predefined number of units, which the documents essentially expressed as a mathematical formula."

Here, under the terms of the gift documents, the donees were always entitled to receive predefined Norseman percentage interests,[5] which the gift documents essentially expressed as a mathematical formula. For each of petitioners' children, this formula was expressed as:

$$x = \frac{\$261,000}{\text{FMV of Norseman}}$$

Similarly, for petitioners' grandchildren this formula was expressed as:

$$x = \frac{\$11,000}{\text{FMV of Norseman}}$$

> Part II: "This formula had one unknown: the value of a LLC unit at the time the transfer documents were executed. But though unknown, that value was a constant"

Petitioners' formula had one unknown, the value of Norseman's assets on January 1, 2004. But though unknown, that value was a constant. The parties

---

[5]Because the record does not disclose the total number of Norseman membership units or the number of Norseman membership units equal to a 2.39% or .101% Norseman membership interest, we have substituted Norseman membership interests into the Court of Appeals for the Ninth Circuit's description. This substitution does not alter the analysis.

have agreed that as of January 1, 2004, the value of a 2.39% Norseman

membership interest was $315,800. Accordingly, the total value of Norseman's

assets on January 1, 2004, was approximately $315,800 divided by 2.39%, or

approximately $13,213,389. This value was a constant at all times.

Part III: "[B]efore and after the IRS audit, the foundations were entitled to receive the same number of units."

Before and after the IRS audit the donees were entitled to receive the same

Norseman percentage interests. Each of petitioners' children was entitled to

receive approximately a 1.98% Norseman membership interest.

$$1.98\% = \frac{\$261,000}{\$13,213,389}$$

Similarly, each of petitioners' grandchildren was entitled to receive approximately

a .083% Norseman membership interest.

$$.083\% = \frac{\$11,000}{\$13,213,389}$$

Part IV: "Absent the audit, the foundations may never have received all the units they were entitled to, but that does not mean that part of the Taxpayer's transfer was dependent upon an IRS audit. Rather, the audit merely ensured the foundations would receive those units they were always entitled to receive."

Absent the audit, the donees might never have received the proper Norseman percentage interests they were entitled to, but that does not mean that parts of petitioners' transfers were dependent upon an IRS audit. Rather, the audit merely ensured that petitioners' children and grandchildren would receive the 1.98% and .083% Norseman percentage interests they were always entitled to receive, respectively.

It is inconsequential that the adjustment clause reallocates membership units among petitioners and the donees rather than a charitable organization because the reallocations do not alter the transfers. On January 1, 2004, each donee was entitled to a predefined Norseman percentage interest expressed through a formula. The gift documents do not allow for petitioners to "take property back". Rather, the gift documents correct the allocation of Norseman membership units among petitioners and the donees because the K&W report understated Norseman's value. The clauses at issue are valid formula clauses.

III.    Public Policy

Respondent argues that the public policy concerns expressed in Procter apply here.  We disagree.  As we have previously stated, the Supreme Court has warned against invoking public policy exceptions to the Code too freely, holding that the frustration caused must be "severe and immediate".  See Commissioner v. Tellier, 383 U.S. 687, 694 (1966).  In Estate of Petter v. Commissioner, T.C. Memo. 2009-280, we held that there is no well-established public policy against formula clauses.  The Commissioner's role is to enforce tax laws, not merely to maximize tax receipts.  See Estate of Christiansen v. Commissioner, 586 F.3d at 1065.  Mechanisms outside of the IRS audit exist to ensure accurate valuation reporting.  Id.  For instance, in the cases at hand the donees and petitioners have competing interests because every member of Norseman is entitled to allocations and distributions based on their capital accounts.  Because petitioners' capital accounts were understated, the donees were allocated profits or losses that should have been allocated to petitioners.  Each member of Norseman has an interest in ensuring that he or she is allocated a fair share of profits and not allocated any excess losses.

With respect to the second and third Procter public policy concerns, a judgment for petitioners would not undo the gift.  Petitioners transferred a fixed

set of interests to the donees and do not seek to change those interests. The gift documents do not have the power to undo anything. A judgment in these cases will reallocate Norseman membership units among petitioners and the donees. Such an adjustment may have significant Federal tax consequences. We are not passing judgment on a moot case or issuing merely a declaratory judgment.

In Estate of Petter we cited Congress' overall policy of encouraging gifts to charitable organizations. This factor contributed to our conclusion, but it was not determinative. The lack of charitable component in the cases at hand does not result in a "severe and immediate" public policy concern.

The Court, in reaching its holdings, has considered all arguments made, and, to the extent not mentioned, concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decisions will be entered for petitioners.